**AEROJET–GENERAL CORPORATION,**
**an Ohio corporation, Plaintiff,**

**v.**

**Claude R. KIRK, Jr., Governor, et al.,**
**Defendants.**

**Civ. A. No. 1534.**

United States District Court,
N. D. Florida,
Tallahassee Division.

Sept. 21, 1970.

## SUMMARY FINAL JUDGMENT FOR PLAINTIFF AND ORDER ON MOTIONS

MIDDLEBROOKS, District Judge.

The above cause initially came on for hearing before the Court on February 18, 1970, upon plaintiff's Motion for Summary Judgment, plaintiff's Motion to Strike certain defenses contained in the Answer of the defendants, and defendants' Motion to Dismiss the Complaint, the latter motion having been filed by the defendants along with their Answer to the Complaint. Prior thereto memorandum briefs had been submitted by plaintiff and defendants in support of their respective motions. At the conclusion of said hearing, the Court requested counsel for plaintiff and defendants to submit additional memoranda of law, and reply memoranda of law upon certain questions the Court raised. Such additional memoranda and reply memoranda were filed and thoroughly considered by the Court. Further oral argument was held before the Court on August 28, 1970, upon the aforesaid motions. The Court having now considered all of said pending motions as well as the pleadings, affidavits, admissions and exhibits on file with the Court and the concessions made by counsel for defendants in oral argument before the Court, is of the opinion and finds that there is no genuine issue of material fact to be tried in this cause and that the plaintiff is entitled to the entry of summary final judgment in its favor as a matter of law and grants the relief sought and prayed for by the plaintiff in its Complaint. The Court makes the following specific findings of undisputed material fact and conclusions of law:

### FINDINGS OF UNDISPUTED MATERIAL FACT

■ The plaintiff is and was at the time of filing of its Complaint herein a corporation duly incorporated, organized and existing under the laws of the State of Ohio, with its principal offices and place of business in a state other than

Karl B. Block, Jr., Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for plaintiff.

Phillip S. Bennett, Gen. Counsel, Board of Trustees of the Internal Improvement Trust Fund.

Rivers Buford, Jr., Gen. Counsel, State of Florida Board of Education, Tallahassee, Fla., for defendants.

Florida. The defendants[1] are the present constituent members of the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida (successors in office to the Trustees of the Internal Improvement Fund of the State of Florida), and the State Board of Education of Florida, both component state agencies of the State of Florida. They are and were at the time of the filing of plaintiff's complaint herein, citizens of the State of Florida and residents of Leon County, Florida. The matter in controversy herein exceeds the sum of $10,000.00, exclusive of interest and costs.

On December 21, 1961, plaintiff and the Trustees and Board of Education of Florida executed and entered into a Lease With Option To Purchase (Exhibit A to the complaint—hereinafter referred to as "Lease-Option" or "contract"). The Lease-Option recited satisfaction of all statutory requirements, performance of all prerequisites to execution of the Lease-Option, and the authority of the Trustees and Board of Education to enter into and execute the Lease-Option. The Trustees and Board of Education by that instrument leased to plaintiff approximately 25,313 acres of specifically described real estate located in Dade County, Florida, for ten years. The defendants owned fee title to the land in their respective official capacities.

Among the covenants of the plaintiff under the Lease-Option was its agreement: (i) to pay an annual rental in advance commencing on the date of execution of the Lease-Option and continuing on the anniversary date thereof each year thereafter in the sum of $2.50 per acre, (ii) to pay annually to the appropriate local governmental agencies a sum of money equal to, but in lieu of, the amount of ad valorem real estate taxes which would be due and payable on the leased lands if title thereto were owned in fee by the plaintiff, together with any valid special assessments levied upon the property (hereinafter referred to as "in lieu taxes") which in lieu taxes would be paid during the lease period or until purchase of the property by plaintiff was effectuated under the option to purchase granted it therein, and (iii) to commence within twelve months after the date of execution of the Lease-Option construction and installation of a manufacturing plant and associated facilities upon the leased lands or upon lands contiguous thereto owned, leased or controlled by plaintiff and in so doing to utilize the leased lands in conjunction with the operation of such manufacturing plant and associated facilities.

Under paragraph 8 of the Lease-Option, the Trustees and Board of Education granted to the plaintiff the exclusive right, option and privilege to purchase all of the lands described therein "at any time within the ten (10) year lease period" for a price of $50.00 per acre, the purchase price to be determined by the number of acres multiplied by $50.00, less the amount of any unearned rent paid by the plaintiff under the lease. No specific mode or manner of exercise of said option to purchase was specified in the Lease-Option. The option to purchase allowed plaintiff an election to pay the total amount of the purchase price simultaneously with delivery to it of a deed to the property vesting good and merchantable fee simple title thereto in the plaintiff, or to pay any amount up to or in excess of 20% of the total purchase price simultaneously with the execution of a "contract to purchase" between the parties. Under said contract to purchase, a promissory note would be given by plaintiff to defendants in the amount of the unpaid balance, due and payable in ten equal, consecutive, annual installments

---

1. The defendants, members of the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida and their predecessors in office will be hereinafter referred to as the "Trustees".

The defendants, members of the State Board of Education of the State of Florida, will be hereinafter referred to as the "Board of Education".

with interest on the unpaid balance at the rate of 5% per annum. Plaintiff was granted the right to pre-pay the unpaid balance without penalty at any time, in which event the Trustees and the Board of Education would deliver to plaintiff a deed to the subject lands vesting good and merchantable fee simple title thereto in the plaintiff. Neither the Lease-Option nor the Notice of Bids and Public Sale, pursuant to which the Lease-Option was executed, contained any condition precedent to the plaintiff's exercise of the option to purchase, save its exercise during the ten-year lease period and the payment by plaintiff of the purchase price. Specifically, the Lease-Option did not contain any term, covenant or condition that plaintiff not have breached, or not be in default in the performance of any lease covenant, or that the lease be in good standing as a condition to its exercise of the option to purchase.

■ The Lease-Option specifically provided that, upon plaintiff's exercise of the purchase option, all covenants of the lease agreement would cease, except that contained in paragraph 5, prohibiting plaintiff, except with defendants' permission, from using the property for "purposes of land speculation in any manner whatsoever" for a period of ten years next following execution of the Lease-Option.

■ The Lease-Option specifically granted the Trustees and Board of Education the "right to cancel" the lease upon breach of or failure of plaintiff to comply with any of the lease covenants; but only after the Trustees and the Board of Education gave plaintiff sixty days prior written notice of their intention to cancel the lease for such breach of covenant, during which period plaintiff had the right to cure such alleged breach or failure to comply with any of the lease covenants.

■ Prior to execution of the Lease-Option, to-wit: On September 21 and 28 and October 5, 12 and 19, 1961, a Notice of Bids and Public Sale (Exhibit 1 to plaintiff's Request for Admissions of Fact—hereinafter referred to as the "Notice") was duly published in the Homestead News, a newspaper of general circulation in Dade County, Florida, in its editions of those dates, in compliance with and as provided for in Sections 270.07–270.09, Florida Statutes, 1961, F.S.A., and a Proof of Publication thereof (Exhibit I to plaintiff's Request for Admissions of Fact) was duly executed by said newspaper and filed with the Trustees and Board of Education.

■■ On the day and in the manner specified by said Notice, plaintiff submitted the high bid on the Lease-Option offering. The parties thereafter executed and entered into a written Lease-Option agreement, the terms of which were essentially identical to the terms enumerated in said public Notice. There were minor and insignificant differences in the Notice terms and in the Lease-Option terms. The Lease-Option reserved to defendants the right to cancel the Lease-Option upon sixty days' prior written notice for the alleged breach of "any" lease covenant. The Notice prescribed cancellation rights only in the event of breach of the covenant contained in paragraph 3 of the Lease-Option. This modification of terms inured to defendants' benefit. Also, the Lease-Option contained a specific procedure to be utilized by defendants in the event they sought to terminate the contract for an alleged breach by plaintiff. A sixty-day notice of default, with opportunity to cure, was the contractual formula implemented to effect the condition in the Notice that under certain circumstances defendants could in their "discretion" terminate the Lease-Option.

Notwithstanding these minor variations, the Court finds that the terms of the Notice and of the Lease-Option were identical in substance, and that the contract here sought to be specifically enforced fairly and properly reflects and contains the terms and provisions enumerated in the Notice.

■ On January 14, 1963, plaintiff and the Trustees and Board of Education entered into an Amendment to Paragraph Three of Lease With Option to Purchase (hereinafter referred to as "Amendment to Lease-Option"). The Amendment to Lease-Option acknowledged the expenditure by plaintiff of "considerable funds in order to commence the actual building construction and installation" of the manufacturing plant and associated facilities provided for by paragraph 3 of the Lease-Option, including extensive grading and foundation work, and further acknowledged, in essence, a "question" as to whether there had been compliance with paragraph 3 of said Lease-Option. The Amendment to Lease-Option, "in order to eliminate" any such "question", and acknowledging "that it would best serve the interests of all parties to the Agreement as well as the public interests" to grant additional time to plaintiff for commencement of construction and installation of such manufacturing plant and associated facilities, amended paragraph 3 of the Lease-Option so as to provide for commencement of such construction and installation prior to December 21, 1964. All other terms and covenants of the Lease-Option were unaffected; and they remained in full force and effect.

■ From and since December 21, 1961, (the date of execution of the Lease-Option), plaintiff timely paid to the Trustees and Board of Education, who received and accepted from the plaintiff all annual rentals and in lieu taxes required to be paid by the plaintiff under the Lease-Option.

■ Plaintiff on September 8, 1969, mailed to the Trustees and Board of Education, by certified mail, return receipt requested, a written notice bearing the same date to said parties that the plaintiff was thereby exercising its option to purchase all of the subject lands under and pursuant to the provisions of paragraph 8(b) of the Lease-Option, electing to pay, as provided for therein, 20% of the total purchase price, less any un-earned rent from date of closing, in cash in exchange for the simultaneous execution of the contract to purchase provided for. The plaintiff expressly waived in said notice its right to have the actual acreage determined by a survey and elected to purchase the property as containing 25,313 acres, as permitted by the Lease-Option provisions. Plaintiff advised the Trustees and the Board of Education that it was and stood ready, willing and able to pay the required amount of the purchase price and to execute said contract to purchase simultaneously with the execution by the Trustees and the Board of Education of said contract to purchase. The written notice of the exercise of the option to purchase was received by the defendants (Trustees and Board of Education) on September 10, 1969. At no time prior to the receipt of said notice of exercise of the option to purchase by them, did defendants or any of them ever deny their authority to enter into and perform under the Lease-Option nor did defendants ever advise the plaintiff or give plaintiff any written notice of any alleged breach by the plaintiff of, or its alleged failure to comply with, any of the covenants contained in the Lease-Option. Neither the Trustees nor the Board of Education ever gave any notice of intention to cancel or of the actual cancellation of said Lease-Option during that time. Nevertheless both the Trustees and Board of Education thereafter advised plaintiff that they would neither accept the required amount of the purchase price nor execute the contract of purchase. Defendants have since failed and refused to do so. At a meeting conducted by the defendants on October 21, 1969 (over a month after plaintiff's exercise of its option to purchase the subject lands), defendants averred for the first time that the plaintiff had not performed all of the lease covenants. Notwithstanding the express requirements as to method of termination of the Lease-Option above referred to, a majority of the defendants voted at that meeting to "void" the Lease-Option. Defend-

ants for the first time on October 21, 1969, advised plaintiff that an alleged breach of paragraph 3 of the Lease-Option existed, because plaintiff's manufacturing plant (dedicated to processing large solid fuel rockets under government contracts) had to become inactive in June of 1967, although the plant was continued to be maintained in a useful condition. (See Exhibit II, Plaintiff's Request for Admissions of Fact.) In sum, defendants were then, for the first time, informing plaintiff that it had lost its right to exercise its option to purchase by reason of an alleged breach of lease covenant prior to the exercise of its option to purchase.

## CONCLUSIONS OF LAW

■ The Court has jurisdiction of the cause and the parties. 28 U.S.C. § 1332. The Lease-Option was made and was to be performed in Florida; and it is undisputed that the Court must ascertain and apply the substantive law of Florida in this case, under the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ Procedurally, the case is before the Court on defendants' Motion to Dismiss Plaintiff's Complaint and Plaintiff's Motion to Strike Affirmative Defenses and for Summary Final Judgment. The material facts have been stipulated to or admitted by defendants and the issues on both the motion to dismiss and motion for summary judgment are issues solely of law. The Court finds that plaintiff is entitled to summary final judgment; and so it is unnecessary to rule on Plaintiff's Motion to Strike.

■ The Court has imposed on itself and counsel the duty to ascertain and apply to these facts the available case law on the issues herein, to the end that the interests and rights of the people of Florida and the parties litigant are properly protected. Though Florida case law is not abundant on the issues here presented, it is sufficient to guide this Court to its decision. Resort need not be had to foreign law, although it is equally corroborative of the Court's conclusions here.

■ It is conceded by defendants that the Trustees and the Board of Education have complete authority and discretion to convey and dispose of lands held by them in such manner as in their judgment may be most advantageous. (See, Florida Statutes, §§ 253.18, 253.02, 229.08, 270.07 and 270.09, F.S.A.; Trustees of Internal Improvement v. Root, 1912, 63 Fla. 666, 58 So. 371; Everglades Sugar & Land Co. v. Bryan, 1921, 81 Fla. 75, 87 So. 68; Defendants' Reply Memorandum, p. 8.)

■ ■ Defendants have likewise conceded that the notice provisions contained in Chapter 270, Florida Statutes, F.S.A., were followed; and there is no bar to plaintiff's claim arising out of the requirements of those statutes. That is, it is conceded that defendants had authority to lease the lands and grant an option to plaintiff to purchase them, that a lease with option to purchase of defendants' lands is a "disposition" of them within the meaning of F. S. § 270.07, F.S.A.; and that publication of the terms and conditions of the authority to accept bids for a Lease-Option of these lands was duly and regularly had, and plaintiff timely and properly made the high bid. It is further conceded and the Court concludes that the subsequent amendment to the time requirement in paragraph 3 of the Lease-Option did not require republication (see Defendants' Reply Memorandum, p. 8). There existed throughout a valid subsisting agreement granting to plaintiff an option to buy the property involved on fixed terms and prices, and the amendment in no way affected that agreement. The amendment was merely an exercise of discretion vested in defendants by the contract to alter the time requirements for performance of paragraph 3 of the lease. It was a written clarification regarding the then status of performance of one aspect of one lease covenant, an aspect about the performance of which there admittedly ex-

isted some "question" and which defendants chose not to litigate or otherwise pursue.

■ With admirable candor, defendants have conceded that their defense is based upon their ascertion that the manufacturing plant and facilities built by plaintiff on lands here involved, or contiguous thereto, is at this time not under full operation; but rather it is merely being maintained on an inactive status due to the current slowdown in solid fuel rocket development (see, Defendants' Reply Memorandum, p. 8).

■ ■ When the State of Florida or one of its component agencies, enters into a contract with private persons, the same legal rules and principles apply to and govern the parties' rights under the contract. State agencies enjoy no privileged status affecting either their contractual rights or liabilities. Daniell v. Sherrill, Fla.1950, 48 So.2d 736; McCarty v. Booth, Fla.1954, 69 So.2d 655; Gay v. Southern Builders, Inc., Fla.1953, 66 So.2d 499. In construing this Lease-Option, therefore, the Court may look to Florida law on such contracts without regard to the public or private capacities of the parties involved.

■■ ■ The contract of the parties is a "Lease with Option To Purchase," in which there was a mutual exchange of undertakings, promises and covenants, more detailed enumeration of which is unnecessary. It suffices to say that mutually enforceable promises may constitute valid consideration for each other, and that this contract was supported by legal consideration. Jones v. McCallum (Fla.1885), 21 Fla. 392; Chamberlain v. Lesley (Fla.1897), 39 Fla. 452, 22 So. 736,; Walters v. Miller (Fla.1915), 70 Fla. 432, 70 So. 629; Foreman v. First National Bank (Fla. 1918), 76 Fla. 48, 79 So. 742; Jenkins v. City Ice & Fuel Co. (Fla.1935), 118 Fla. 795, 160 So. 215; Texas Co. v. Pensacola Maritime Corp., 279 F. 19 (5th Cir. 1922); Miami Coca-Cola Bottling v. Orange Crush Co., 296 F. 693 (5th Cir.

1924). The terms of the lease and the terms of the option were in some ways related, and in some ways independent of each other; but the exchange of mutually enforceable promises constituted consideration for both the lease and the option agreements. See, Sisco v. Rotenberg (Fla.1958), 104 So.2d 365; Cf. 32 American Jurisprudence, Landlord & Tenant, § 299.

■ Defendants' principal defense is predicated on their contention which plaintiff must admit for purpose of the pending motions, that at the time plaintiff gave notice of exercise of the option its manufacturing plant and associated facilities were not in operation, but were merely being maintained by a 14-man maintenance staff. Defendants have characterized their legal defense as "failure of consideration", "failure to perform conditions precedent", and "time is the essence of an option contract". Whatever label the defense should take the Court must decide whether this asserted fact constitutes under any legal theory a defense to plaintiff's claim. The Court concludes as a matter of law that it does not.

■ ■ The "failure of consideration" theory clearly does not apply in this case. In Jones v. McCallum (1885), 21 Fla. 392, the Florida Supreme Court decided under what circumstances a contract could be avoided due to failure of consideration. McCallum agreed with Jones to write editorials and lend counsel to Jones in a newspaper enterprise; and Jones agreed to pay McCallum $1,000.00. McCallum died within days after the agreement and prior to performance of *any* services under the contract. His widow sought payment under a provision requiring payment to her in case McCallum died. The Florida Supreme Court held that recovery could be had if McCallum had performed *any* services under the contract; but since *no* services had been rendered prior to his death the consideration for the agreement had failed and the promise of Jones was discharged.

Applying that rule here it is clear that consideration has not failed. Plaintiff has paid rental each year when due and has paid "in lieu" ad valorem taxes. Plaintiff has further become obligated to pay the $1,265,000.00 purchase price. Consideration has not "failed" here. Moreover, its alleged failure was not asserted until long after plaintiff had exercised its option to purchase which terminated the lease and all of the covenants thereunder save only that against land speculation until December 21, 1971 (paragraph 5 of Lease-Option).

█ The "condition precedent" argument is that the option to purchase was conditioned on there being no breach of any lease covenant at the time plaintiff gave notice of exercise of the option. Defendants argue that plaintiff's manufacturing facilities were not in operation when the option was exercised and therefore plaintiff was not entitled to exercise and is not entitled to purchase.

█ An option contract is not a contract of sale. "[I]t is a unilateral contract which gives the option holder the right to purchase under the terms and conditions of the option agreement. South Inv. Corp. v. Norton (Fla.1952), 57 So.2d 1, 2. Thus, the Court must look to "the terms and conditions of the option agreement" to ascertain whether good standing under the lease is a *condition* of the option agreement.

██ The parties' agreement speaks for itself, and it makes very clear the relationship of option terms and lease covenants. The lease covenants are contained in paragraphs 1, 2, 3, 4, 5, 6, 7, 9, 10 and 11; and the option terms are contained in paragraphs 2, 4, 5 and 8. The agreement specifically provides in paragraph 4, that:

"It is mutually understood and agreed that this lease shall terminate if option to purchase said lands hereinafter

granted by Lessor to Lessee is exercised by Lessee *and in such event no covenant herein made on the part of Lessee shall extend beyond such termination of this lease excepting the covenant of Lessee contained in paragraph 5 next below."* [2]

And in paragraph 8, the agreement is that:

"The Lessor herewith grants to the Lessee the exclusive right, option and privilege to purchase all of the land described herein *at any time within the ten (10) year lease period* at and for the price of Fifty Dollars ($50.00) per acre. * * *"

These two contract provisions explicitly define the nature of the option plaintiff received under this contract. Its terms are simple and they are *independent* of the lease covenants except as specified. Plaintiff had the option to purchase the lands during the lease term for a designated price upon terms designated in paragraph 8. If and when plaintiff exercised its option in the manner required by law the contract specifically provided that the "lease shall terminate" and that "no covenant herein made on the part of Lessee shall extend beyond such termination of this lease excepting the covenant" not to use the lands for speculative purposes within ten years after execution of the contract. Under this contract, paragraph 3 and all other lease covenants (save one) expire and are of no further effect when the option is exercised.

The contract (including both the "lease" terms and the "option" terms) provides no other conditions to the exercise of the option and the law implies none. Insofar as lease covenants are concerned the contract makes termination for default in performance or breach of lease covenants only an alternative which defendants may utilize *in their discretion* [3] if they conclude that

2. All emphasis supplied unless otherwise indicated.

3. This is the terminology used in the notice of authority to accept bids, which was

reduced to a specific procedure in the contract.

the lease is being breached. The contract requires specific action to be taken to declare default in any lease covenant and terminate the agreement, furthermore, and does not contain an automatic default or reverter provision. The contract rather requires that, in the event defendants desired to declare default or terminate the contract they were required to give notice of such alleged breach and to give plaintiff sixty days in which to *cure* any default.

The record is undisputed that defendants have never given a sixty day notice of default; and they gave no notice of default of any kind from the commencement of the lease term through the time plaintiff exercised the purchase option. It would be inequitable to allow defendants to avoid now the contract when plaintiff had never been given notice of default and had never been given opportunity to cure any default—an opportunity defendants were bound to afford to plaintiff before the Lease-Option could be terminated.

In sum, paragraph 3 and all other lease terms save one were covenants of the lease for breach of which defendants had power to terminate the Lease-Option; but they were not, either by bylaw or by contract, *conditions* of the option or conditions precedent to its exercise. Defendants cannot after the exercise of the option to purchase, validly avoid the option by then asserting for the first time a prior alleged breach of a covenant of the lease wherein the option was granted. E. g., Gassert v. Anderson (1937) 201 Minn. 515, 276 N.W. 808; Keogh v. Peck (1925), 316 Ill. 318, 147 N.E. 266; Chapman Drug Co. v. Chapman (1960), 207 Tenn. 502, 341 S.W.2d 392; Padilla v. Sais (1966), 76 N.M. 247, 414 P.2d 223; Reynolds v. Earley (1955), 241 N.C. 521, 85 S.E.2d 904; Shannon v. Jacobson (1928), 262 Mass. 463, 160 N.E. 245; Cf., South Inv. Corp. v. Norton, supra. Accordingly, plaintiff had the right to exercise its option throughout the lease term unless and until defendants properly and in conformity with its terms, terminated the lease and the option to purchase therein granted, or, at least gave proper notice of default or breach.

Defendants have argued that "time is the essence of an option contract" in conjunction with their assertion that plaintiff has ceased operations at the manufacturing plant. The reasoning applicable to the "condition precedent" argument disposes of this theory. Time is admittedly the essence of an option in that the term of the option limits the optionee's right to exercise. Under the Lease-Option plaintiff's right to exercise the option survived for the lease term, which term ended after ten years or upon proper termination after declaration of default by defendants. Therefore, the undisputed fact that plaintiff exercised the option prior to any such declaration of default disposes of this theory.

Where one holds an option based on a valid consideration to purchase real estate and desires to exercise the option to buy, he must definitely accept the proposition by notifying the vendor of such decision within the time specified on the terms named. Orlando Realty Board Building Corp. v. Hilpert (1927), 93 Fla. 954, 113 So. 100. When an option to buy lands is definitely accepted, it ceases to be an option and ripens into a mutually binding and enforceable contract, the terms of which are identical to those contained in the option. *Ibid*; Behrman v. Max (1931), 102 Fla. 1094, 137 So. 120. The Court concludes as a matter of law that the written notices of exercise dispatched by plaintiff to defendants on September 8, 1969, were timely and proper and constituted exercise by plaintiff of its option in accordance with the option terms contained in the contract. Accordingly, on September 10, 1969, (the date defendants received this notice), the option ripened into a mutually binding and enforceable contract for sale; and the landlord-tenant relationship between the parties ceased. Defendants attempted cancellation of the contract given there-

after is and was null and void and of no force or effect.

■ ■ The contract provides in paragraph 8(b) that plaintiff's initial payment of not less than 20% of the purchase price becomes due and payable at such time as the parties execute a contract to purchase. It was not necessary that plaintiff tender actual payment of that sum in order to bring this action. Sisco v. Rotenberg, supra. It suffices that plaintiff advised defendants and the Court, as it did, that plaintiff was ready, willing and able to perform its contractual obligations. There has been no question raised of plaintiff's ability to perform.

■ ■ In their Answer defendants asserted affirmatively the defense of "failure of inducement", which defense the Court concludes is insufficient as a matter of law.

■ ■ In their Answer defendants asserted affirmatively the defense that the contract was contrary to public policy. On the undisputed facts, that defense is as a matter of law insufficient. A contract is not void as against public policy unless it is injurious to the interests of the public, or contravenes some established interest of society. 7 Florida Jurisprudence, Contracts, § 62. That is, contracts void as contrary to public policy are so because they are either agreements to effect some unlawful or socially repugnant end, or agreements to effect some lawful end by unlawful or socially repugnant means. See, 6A Corbin on Contracts, § 1373, p. 2. This contract fits in neither category. It was entered by defendants as public officials pursuant to legislative authority hereinbefore cited.

■ ■ Defendants also asserted by way of motion to dismiss the complaint filed along with their Answer to the complaint, that the contract is not sufficiently definite in its terms to be specifically enforced. This contention, the Court concludes, is without merit. The option to purchase granted the plaintiff which became a binding contract of sale and purchase upon plaintiff's exercise of its option, contained all of the essential provisions of a contract for the sale of land, i. e. (1) the property to be conveyed and the interest therein to be conveyed is definitely described; (2) the purchase price is definite and specific; and (3) the time and terms of payment of the purchase price are definite. Edwards v. Rives (1895), 35 Fla. 89, 17 So. 416; Florida Yacht Club v. Renfroe (1914), 67 Fla. 154, 64 So. 742; Dixie Naval Stores Co. v. German-American Lumber Co. (1918), 76 Fla. 339, 79 So. 836. The fact that the contract in question provided alternatively at plaintiff's election, for an all cash payment simultaneously with delivery to plaintiff of a deed or a cash down payment simultaneously with execution of a deed, with the balance of the purchase price to be payable over a definite period of time pursuant to a promissory note given by plaintiff to defendants, does not preclude the contract from being specifically enforced. Taylor v. Mathews (1907), 53 Fla. 776, 44 So. 146. The elements urged by defendants that are not specifically covered in the contract are not essential elements of a contract to purchase. As to these, absolute certainty or definiteness is not required (29A, Fla. Jur., Specific Performance, § 40, pp. 633, 634) and each may be supplied or reduced to certainty by legal rules and presumptions. Daubmyre v. Hunter (1923), 86 Fla. 326, 98 So. 69; Stone v. Austin (2nd DCA 1958), 107 So.2d 232.

■ The equities herein are with the plaintiff. It would be inequitable to now deny plaintiff the rights accorded it under the parties' contract. Specific performance is an appropriate and necessary remedy. There is no genuine issue as to any material fact and plaintiff is entitled to judgment as a matter of law.

Accordingly, it is

Ordered and adjudged as follows:

■ Plaintiff's Motion for Summary Judgment be and the same hereby is granted; and final judgment be and the

same hereby is entered in favor of plaintiff and against defendants for the relief sought in the complaint. Defendants are hereby ordered and directed within thirty days from the date of entry of this Order, to execute a contract of purchase covering the lands described in paragraph No. 1 of the Lease-Option in accordance with the terms of paragraph 8(b) thereof unless by agreement all parties extend such thirty days' time limit. Defendants are further hereby ordered and directed to accept payment by plaintiff in any amount equal to or in excess of twenty percent (20%) of the total purchase price simultaneously with execution of said contract to purchase; and to accept a promissory note for an amount equal to the unpaid balance of the purchase price, and to accept payments, including any advance payments, made thereunder in accordance with paragraph 8(b) of the contract; and upon payment by plaintiff of the balance and entirety of the contract purchase price, defendants are further hereby ordered and directed to deliver to plaintiff a fee simple deed to said lands vesting good and merchantable fee simple title to plaintiff, subject to applicable statutory rights and reservations as provided for in paragraph 8(b) of the Lease-Option. Should plaintiff elect at or prior to the time herein prescribed for closing to pay the total amount of the purchase price for said lands, the defendants are ordered and directed to receive from the plaintiff the total amount of purchase price for said lands in cash and to simultaneously therewith execute and deliver to the plaintiff a deed vesting in the plaintiff good and merchantable fee simple title to said lands, subject only to applicable statutory rights and reservations as provided for in paragraph 8(a) of the Lease-Option. The convenant contained in Paragraph 5 of the Lease-Option remains in full force and effect to the same extent and in the same manner as if the contract had been performed without necessity for Court ordered specific performance.

■ Defendant's Motion to Dismiss be and the same hereby is denied.

■ The parties will bear their own costs.

■ The Court retains jurisdiction of this cause for the purpose of entering such further order or orders as may be necessary and appropriate to enforce the provisions of this judgment.