**AEROJET–GENERAL CORP., an Ohio corporation, Plaintiff,**

v.

**Reubin O'Donovan ASKEW, Governor of the State of Florida, et al., Defendants.**

**METROPOLITAN DADE COUNTY, a Political Subdivision of the State of Florida, Plaintiff,**

v.

**AEROJET–GENERAL CORPORATION, an Ohio corporation and any and all persons having or claiming any right, title or interest in and to the real property described herein, Defendant.**

**Civ. A. Nos. 1831, 73–33.**

United States District Court,
N. D. Florida.

Nov. 21, 1973.

George W. Wright, Jr., Mershon, Sawyer, Johnston, Dunwody & Cole, Karl B. Block, Jr., Miami, Fla., J. W. Moore, Yale Law School, for Aerojet-General Corp.

Robert Shevin, Atty. Gen., Barry S. Richard, Deputy Atty. Gen., for Board of Trustees of Internal Improvement Trust Fund.

Stuart Simon, Dade County Atty., Alan T. Dimond, Asst. County Atty., Thomas C. Britton of Shutts & Bowen, Miami, Fla. (special counsel), for Metropolitan Dade County.

## OPINION–ORDER

MIDDLEBROOKS, District Judge.

These causes are before the Court upon cross motions for summary judgment by the parties in the action by Aerojet for declaratory and injunctive relief and the action by Metropolitan Dade County and others to quiet title to the subject lands. The parties having stipulated that there are no material factual disputes and that all legal issues necessary for the disposition of these matters have been presented, the Court enters the following findings of fact and conclusions of law as may be required by Rule 52, Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. The State of Florida Board of Education and The State of Florida Board of Trustees of the Internal Improvement Trust Fund are each composed of the following officials: Governor, Secretary of State, Attorney General, Comptroller, Treasurer, Commissioner of Agriculture and Commissioner of Education. Sections 229.012 and 253.02(1) Florida Statutes Annotated. In September and October, 1961, these two bodies caused to be published in the Homestead News, a newspaper of general circulation in Dade County, Florida, a Notice of Bids and Public Sale by means of which bids were solicited for the lease and/or purchase of lands owned by the two boards in Dade County. Approximately 25,313 acres of land were and are involved. Aerojet was considered the successful bidder.

2. On December 21, 1961, the Aerojet-General Corporation (hereafter Aerojet), an Ohio Corporation doing business in the State of Florida, entered into a written lease with option to purchase the leased lands at Fifty Dollars ($50.00) per acre. The ten (10) year lease-option agreement provided, generally, that Aerojet agreed to pay the sum of Two Dollars and Fifty Cents ($2.50) per acre during the lease; that Aerojet would pay annually the amount equal to and considered as in lieu of ad valorem taxes payable on the lands; and that said payments were to continue through the lease period or until purchase of the lands by the lessee Aerojet. More specifically, the agreement provided in Paragraph 8 as follows:

"(a) Upon the election of Lessee, the total amount of the purchase price to be determined, as aforesaid, shall be paid to Lessor simultaneously with delivery to Lessee of a deed to said lands vesting good and merchantable fee simple title thereto in Lessee subject only to applicable statutory rights and reservations in effect on the date of conveyance and the covenant on the part of the Lessee to be kept and performed contained in Paragraph 5 above".

3. On January 15, 1962, Attorney General Richard W. Ervin, now Florida Supreme Court Justice, wrote to Mr. J. T. Williams, State Land Office Record Clerk, replying to Williams' query concerning the release of statutory reservation referred to in paragraph 8 of the Aerojet lease-option agreement. In pertinent part the text of the memorandum from Attorney General Ervin is as follows:

"The statutory rights and reservations referred to in subject portion of this lease with option to purchase are those contemplated in Section 270.11, Florida Statutes [F.S.A.]."

Florida Statutes, Section 270.11, F.S.A., provides for the reservation in the Board of Trustees of

"[A]n undivided three-fourths interest in and title in and to, an undivided three-fourths interest in all the phosphate, minerals and metals that are or may be in, on or under the said land and an undivided one-half interest in all the petroleum that is or may be in, on or under said land with the privilege to mine and develop the same. . . ."

4. In addition to leasing these certain lands from the state boards, Aerojet purchased additional land surrounding the state land at an expenditure of Seven Million Dollars ($7,000,000.00). In early 1962, Aerojet began construction of a plant for the development of solid rocket fuels which resulted in a capital investment on Aerojet's part for buildings and equipment of Twenty One Million Two Hundred Thousand Dollars ($21,200,000.00). About Two Million Dollars ($2,000,000.00) of this construction was completed on the leased lands in the spring of 1964, and was in operation until June, 1967, at which time it ceased operations due to cutbacks in the federal government spending on solid rocket fuel research and development. Subsequent to June, 1967, Aerojet maintained a caretaker force at these facilities.

5. The Florida Legislature in 1965, enacted what is now Section 253.111, Florida Statutes Annotated, which in part provides:

"The board of trustees of the internal improvement trust fund of the state shall not sell or convey any land to which they hold title unless and until they shall afford an opportunity to the county in which such land is situated to receive such land for public purposes. . ." (Chapter 65–324, Laws of Florida.)

6. On September 8, 1969, Aerojet notified the members of the state boards in writing that it had elected to exercise its option to purchase the lands which were described in the lease-option agreement. Prior to that date Aerojet had paid over Five Hundred Thousand Dollars ($500,000.00) in yearly rentals under the agreement and Two Hundred Thirty One Thousand Dollars ($231,000.-00) to Dade County in lieu of ad valorem taxes. Payments under the lease were current in all respects. At no time prior to the "notify" date, September 8, 1969, had the members of the state boards or their predecessors in office notified Aerojet or even intimated to it that Aerojet had failed in any way whatever to comply with the terms of the lease.

7. At a meeting of the State Board of Education and of the Board of Trustees of the Internal Improvement Trust Fund on October 21, 1969, it was decided not to convey the land to Aerojet.

8. Subsequently, on October 21, 1969, Aerojet brought suit in this Court against members of the state boards seeking a decree of specific performance of the purchase option contained in the lease-option agreement. On September 21, 1970, this Court granted Aerojet's motion for summary judgment. Aerojet-General Corporation v. Kirk, 318 F. Supp. 55 (N.D.Fla.1970). The members of the state boards took a timely appeal to the United States Court of Appeals for the Fifth Circuit from this Court's summary judgment and decree of specific performance. On December 9, 1971, the Court of Appeals affirmed this Court's order. Aerojet-General Corporation v. Askew, 453 F.2d 819 (5th Cir. 1971). The United States Supreme Court on October 10, 1972, denied the state board members' petition for writ of certiorari. 409 U.S. 892, 93 S.Ct. 110, 34 L.Ed.2d 149.

9. Upon failure of the state boards to comply with the order of this Court to convey the lands to Aerojet, this Court on June 20, 1972, appointed a Commissioner for the purpose of executing a deed to the lands described in the lease-option agreement in favor of Aerojet. Upon receipt of a cashier's check in the amount of One Million Two Hundred Forty Six Thousand Three Hundred Eight and 88/100 Dollars ($1,246,308.-88) drawn on the First National Bank of Miami, and made payable to the State of Florida Board of Trustees of the Internal Improvement Trust Fund and the State of Florida Board of Education, a deed was executed and delivered to Aerojet.

10. On June 9, 1972, Metropolitan Dade County instituted a mandamus proceeding in the Supreme Court of Florida against the members of the state boards alleging its rights pursuant to Section 253.111, F.S.A., to acquire the "Aerojet lands" for public purposes; Aerojet was not made a party to these proceedings. Dade County contended that its right under the statute was "prior to and supersedes any right of interest of Aerojet General Corporation to acquire these lands." The members of the state boards on June 22, 1972, filed their return in the mandamus action reciting the following:

"At the time the petition (mandamus) was filed, respondents were under order of the United States District Court for the Northern District of Florida, issued on June 7, 1972, pursuant to Rule 70, Federal Rules of Civil Procedure, to deed the land in question to Aerojet-General Corporation within fifteen days.

"Pursuant to that order a fee simple deed was executed and delivered

by the appointed commissioner to Aerojet-General Corporation on June 21, 1972."

However, on October 11, 1972, the Florida Supreme Court issued the writ of mandamus sought by Dade County against the members of the state boards. State ex rel. Metropolitan Dade County v. Askew et al., 267 So.2d 827 (Fla. 1972).

The Board of Trustees of the Internal Improvement Trust Fund was ordered to offer the land to Dade County in accordance with the provisions of Section 253.-111, F.S.A. No mention was made with regard to those lands held by the State Board of Education. And the Florida Court specifically did not discuss any of the matters pertinent to the specific performance suit before this Court. Rather, the basis for the issuance of the writ was stated as follows:

"(O)ur study of the contract itself leads us to conclude that the parties intended that subsequently enacted statutes be taken into consideration." 267 So.2d 827 at 829."

11. On June 20, 1972, the day before Aerojet received its Commissioner's deed, Aerojet instituted case No. 1831 in this Court seeking an adjudication of the rights of Dade County to the lands encompassed by the Commissioner's deed.

12. On October 31, 1972, pursuant to the results of the action before the Florida Supreme Court, the Board of County Commissioners of Metropolitan Dade County, Florida, passed a resolution pursuant to Section 253.111, F.S.A., offering to buy the disputed lands from the state boards—even though only the Trustees had been directed to offer the lands for sale. A check in the amount of One Million Two Hundred Forty Six Thousand Three Hundred Eight and No/100 Dollars ($1,246,308.00) was tendered to the members of the state boards. (This exact amount was paid to the boards by Aerojet). The state boards voted to accept the Dade County purchase offer

and a deed was executed and delivered to Dade County.

13. Subsequently, this Court enjoined Dade County from recording its newly acquired deed to the disputed lands. In addition, Aerojet was enjoined from conveying any part of the property and Dade was further enjoined from instituting any action to quiet title to that property. Aerojet-General Corporation v. Askew, 355 F.Supp. 928 (N.D.Fla. 1973).

14. This Court modified its injunctions against Dade County's recording of its deed from the Trustees and institution of a quiet title action and on approximately January 10, 1973, Dade County instituted a quiet title action in the Eleventh Circuit Court of Florida, in and for Dade County. Aerojet, named a party defendant in that action, removed the matter to the United States District Court for the Southern District of Florida. Additionally, Aerojet appealed this Court's order modifying the injunctions to the Court of Appeals for the Fifth Circuit. On March 5, 1973, the Court of Appeals, 476 F.2d 184, reinstated this Court's injunction against any suits challenging Aerojet's title so that this Court could consider the merits of Aerojet's declaratory action initiated in this Court on June 20, 1972. Subsequently, Aerojet's action and Dade County's quiet title action were consolidated for disposition by this Court.

15. In the action now pending before this Court, both Aerojet and Dade County have moved for summary judgment. This Court on August 22, 1973, heard oral argument with respect to the cross motions for summary judgment, at the outset of which the parties stipulated on the record that the respective motions encompassed all the issues bearing upon the ultimate disposition of this litigation. This Court has dismissed the quiet title action instituted by Dade County and has allowed Dade County to file a counterclaim in the Aerojet declaratory action, such counterclaim seeking for Dade County the same relief sought

by Aerojet with respect to the disputed lands.

## CONCLUSIONS OF LAW

### I. IMPAIRMENT OF CONTRACT

Turning first to the position of Dade County that the application of Section 253.111, F.S.A., is not barred by the principles of impairment of contract, this Court would review the decision of the Supreme Court in Wood v. Lovett, 313 U.S. 362, 61 S.Ct. 983, 85 L. Ed. 1404 (1940). In *Wood, supra,* the Court sought to deal with a 1937 Act of the Arkansas legislature which repealed an Act passed by that body in 1935. The 1935 Act had as its purpose to give assurance to prospective purchasers of lands from the state, which lands had been forfeited to the state because of delinquent taxes, a certain immunity from attacks on their title. In effect, the state sought to guarantee the title to these purchasers. As in the case before this Court, the Supreme Court faced the question of whether the state granted a valuable right which it subsequently essayed to take away. The Court noted that:

> "The federal and state courts have held, with practical unanimity, that any substantial alteration by subsequent legislation of the rights of a purchaser at tax sale, accruing to him under laws in force at the time of his purchase, is void as impairing the obligation of contract." *Wood, supra,* page 369, 61 S.Ct. at 986.

The Court held that the repeal of the 1935 Act impaired the obligation of the appellants' contracts with the state in violation of Art. I, § 10 of the United States Constitution. (It is interesting to observe that the "statute and the protection it afforded" was found to constitute a contract between the state and the aggrieved individuals.) See also Appleby v. New York City, 271 U.S. 364, 46 S.Ct. 569, 70 L.Ed. 992 (1925) (wherein the Supreme Court held that the City's grant of land under water

made to Appleby with the full sanction of the legislature, could not be impaired by subsequent legislation.)

If the case before this Court involved simply whether Section 253.111, F.S.A. could apply to foreclose certain rights granted back in 1961, the question would be quickly answered in the negative. But the instant lawsuit differs in that Dade County points to the language in paragraph 8 of the lease-option agreement, which conditions the exercise of the option upon certain unnamed statutory rights and reservations, and argues that the parties thereby contemplated such a statute as Statutes, Section 253.111, F.S.A., and in effect consented to such an eventuality in the guise of a legitimate abridgement in the public interest. A key question comes to mind: Would Aerojet have committed itself to a multi-million dollar investment if in fact it had contemplated such a possibility?

In regard to the proposition that in fact Aerojet did in 1961, contemplate its demise, this Court is obliged to consider the rationale in Mobil Oil v. Oil Chemicals and Atomic Workers Union, 483 F.2d 603, 5th Cir. 1973. In this case the Fifth Circuit considered the validity of an agency shop clause in a union negotiated agreement with Mobil Oil Company in the State of New York. The company had moved its operations into the State of Texas where by state statute agency shop clauses are precluded. Mobil Oil there sought to argue the invalidity of the provision. The Court, noting that the parties freely chose to be covered by an agency shop clause, found that "They cannot be presumed to have contemplated a law which would defeat their engagement." *Mobil Oil, supra.* Dade County argues in the case before this Court that Aerojet by the lease-option agreement contemplated a law which would be at least ruinous. It cannot be. This is especially true since on January 15, 1962, some seven (7) years prior to the exercise of the option by Aerojet, the Attorney General of Florida, the chief legal officer of the state,

issued his opinion stating that the "applicable statutory rights and reservations referred to· . . . are those contemplated in Section 270.111 [270.-11], Florida Statutes [F.S.A.]."

Dade County argues secondly, even if Aerojet did not consent to the application of Section 253.111 F.S.A., the operation of such was "in the public interest" and therefore a justified impairment. Dade County cites El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1964). The Supreme Court in *El Paso* considered a statute which restricted a previously unlimited time period in which to reinstate claims to forfeited lands in Texas. In finding for the City of El Paso, the Court noted that "we think the objects of the Texas statute make abundantly clear that it impairs no protected right under the Contract Clause." p. 509, 85 S.Ct. p. 584. Interestingly, the "object" of the statute or the legitimate interest of the public in the *El Paso* case was the same interest which the Court dealt with and protected in *Wood, supra*. In both situations the statutes involved sought to restore confidence in the stability and integrity of land titles issued by the state.[1] Unfortunately for Dade County, the same public interest is not in controversy in the case at bar. Being merely in the domain of the reserve power of a state, i. e., the general welfare of the people, is not in itself sufficient;

"As Mr. Justice Johnson said in Ogden v. Saunders, '(i)t is the motive, the policy, the object, that must characterize the legislative act, to affect it with the imputation of violating the obligation of contracts.' 12 Wheat. 213, 291, 6 L.Ed. 606." *El Paso, supra*, at 509, 85 S.Ct. at 584.

This Court must then search for the "public interest" which Dade County alleges is served even as Aerojet is offered up to Asmodeus.

The opinion in Home Building & Loan Assn. v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), amounts to the comprehensive restatement of principles underlying the application of the Contract Clause. No doubt after the *Blaisdell* opinion it is undisputed "that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula." *Blaisdell*, supra, at 428. But certainly only specific interests justify the exercise of a continuing and dominant power by the state notwithstanding interference with contracts. Generally and historically the state retains the requisite "residuum of power" to protect the public health against the maintenance of nuisances, Fertilizing Co. v. Hyde Park, 97 U.S. 659, 24 L.Ed. 1036 (1878); Butchers' Union Co. v. Crescent City Co., 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585 (1883); to protect the public morals, Stone v. Mississippi, 101 U.S. 814, 25 L.Ed. 1079 (1879); Beer Co. v. Massachusetts, 97 U.S. 25, 24 L.Ed. 989 (1877); to protect the public safety, Chicago B. & Q. Railroad Co. v. Nebraska, 170 U.S. 57, 18 S.Ct. 513, 42 L.Ed. 948 (1897); and to protect certain economic interests of the state, Manigault v. Springs, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274 (1905). "This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort, and general welfare of the people . . . ." *Manigault, supra*, at 480, 26 S.Ct. at 130.

The contested statute in the instant case and that upon which Dade County predicates its claim provides only that the County shall have an opportunity to "receive such lands for public purposes." Section 253.111, F.S.A. "Public purposes" under the Florida Statutes is not necessarily co-extensive or tantamount to the "public interests" protected by the exception to the Contract Clause and the Court notes additionally that Dade County has not sought to urge upon this Court the specific "interests" of the state which are

---

[1]. Arguably, Aerojet could maintain that the statute threatens the confidence in the integrity of land titles issued by the state.

being protected herein. It is the view of the Court that the factual setting of this matter is not in parity with the interests heretofore protected by the Supreme Court in construing the Contract Clause and thus the statute is not a legitimate impairment of Aerojet's lease-option agreement.

## II. RES JUDICATA

In regard to the claim by Dade County that the doctrine of *res judicata* is not applicable, this Court would concede that federal courts are required to apply the law of the forum state in diversity cases, but only if there is authority from that state's highest court in regard to the contested issue. Breeland v. Security Insurance Company of New Haven, Connecticut, 421 F.2d 918, 921 (5th Cir., 1969). In the *Breeland* case, however, the Fifth Circuit there construed the case as it thought the highest court in Louisiana might have done since there was no state pronouncement. While it may be that there is Florida authority with regard to the issue of *res judicata*, it is the view of this Court that the recent mandamus action before the Florida Supreme Court on certain facts relevant to this case simply is not such authority, implicitly or otherwise. It is certainly well settled that Aerojet as an *amicus curiae* would not be bound. Moore's Federal Practice 0.-411[6], 1551.

In State ex rel. Walker v. Gessner, 157 Fla. 798, 26 So.2d 896 (1946), the Florida Supreme Court considered a mandamus action to compel county commission officials to call an election in Volusia County. The appellants, movants in the mandamus action, claimed that they were not bound by an earlier injunction which resulted in permanently enjoining the election. The Florida court held that though appellants were not parties to the injunctive proceeding, they were bound thereby as *members of the public* who were each bound by the injunctive proceedings in a matter of general interest to all the people of the county.

Similarly, in Young v. Miami Beach Improvement Co., 46 So.2d 26 (Fla. 1950), the Florida Court held that members of the public though they had not been parties to an earlier suit (wherein it was held that the city was estopped to assert that there had been activity or conduct tantamount to a dedication of certain beach property), were nevertheless each themselves estopped to make such claims. The Court stated the applicable principle of law as follows:

"A judgment against a municipal corporation in a matter of general interest to all its citizens is binding on the latter, although they are not parties to the suit. Every taxpayer is a real, although not a nominal, party to such judgment, and cannot relitigate any of the questions which were litigated in the original action against the municipality, or its legal representatives and if the municipality fails to avail itself of legal defenses, the people are concluded by the judgment." (Citations omitted) *Young,* supra, at 30.

The aforesaid principle of law has been restated and reaffirmed in Florida appellate courts as recently as 1962 in City of New Port Richey v. State ex rel. O'Malley, 145 So.2d 903, 906 (Fla.App. 1962). If the analogy is accurate the principles of law enunciated above suggest that the County whose interest was certainly in question in the earlier specific performance action before this Court and in a matter of substantial public interest, should not now be heard to contest the results of those proceedings.

The Supreme Court of Florida in Donahue v. Davis, 68 So.2d 163 (Fla.1953), recognized the following four conditions that must concur before the doctrine of *res judicata* can be applied:

"The rule is well settled that in order to make a matter *res judicata* four conditions must concur, namely: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action, and (4) identity of the quality in the person for or against whom the

claim is made. Brundage v. O'Berry, 101 Fla. 320, 134 So. 520; Gray v. Gray, 91 Fla. 103, 107 So. 261." *Donahue,* supra, at 169.

The Florida appellate courts expressed the rule in Reynolds v. Reynolds, 117 So.2d 16 (Fla.App.1959):

> "In order for the defense of *res judicata* to prevail the final judgment or decree relied upon must reflect within its four corners matters from which it can be determined that the second suit is (1) upon the same cause of action, (2) between the same parties as the first, and (3) that the final judgment in the first suit upon the merits is conclusive in the second suit as to every question that was presented or might have been presented and determined in the first suit." *Reynolds,* supra, at 20.

Essentially, the same test was adopted by the Fifth Circuit in Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958 (5th Cir. 1968). In *Astron* the Court dealt with the problem which confronts this Court, i. e., the identity of two lawsuits. That Court offered the following language as a means to apply the standard "identity" tests:

> "In regard to the identity of the two lawsuits, it is the substance of the actions that must be compared and not their form. Acree v. Air Line Pilots Association, 5 Cir. 1968, 390 F.2d 199 (Wright, J., sitting by designation); Wilson Cypress v. Atlantic Coast Line R. Co., 5 Cir. 1940, 109 F.2d 623. However, there is no one generally accepted test applicable to all situations for determining identity.
>
> 'In deciding whether the substances of two actions are for *res judicata* purposes the same, various tests have been advanced: Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence sustain both judgments?' Acree v.

Air Line Pilots Association, 5 Cir. 1968, 390 F.2d 199, 201." *Astron, supra* at 961.

The parties in the matter before this Court seemingly concede that *res judicata* would be applicable but for the question of the identity of the parties, Dade County contending, of course, that it is not bound by the former specific performance judgment of this Court. It is true that the question of the applicability of the Section 253.111, F.S.A., was not specifically raised previously. However, this Court finds that the question raised by that statute is sufficiently "related to the subject matter and relevant to the issues" such that it could have been raised in the first suit and thus judgment is conclusive on it despite the fact that it was not expressly pleaded or otherwise urged. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Moore's Federal Practice, Vol. IB, § 0.-443(2), p. 3903. It is well settled additionally, that a litigant cannot resort to piecemeal litigation.

> "A party . . . is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to the litigation if such a practice were permissible." Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 320, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927), citing the general doctrine stated in Stark v. Starr, 94 U.S. 477, 485, 24 L.Ed. 276 (1876).

Dade County resists the determination of "identity" asserting principally that it was not in "privity with the Trustees" (party to the first suit) and that the Trustees were not authorized to raise matters in their defense by the doctrine of virtual representation.

The operative facts are not in dispute. The applicability of the Florida Statute could have been raised by the Trustees

in the first suit but was not.[2] The County was a recipient of monies from Aerojet paid in lieu of ad valorem taxes pursuant to the agreement between the Trustees and Aerojet. Later the County became grantee of the deed from the Trustees with knowledge that this Court had ordered the deed to be given to Aerojet and in fact with knowledge that Aerojet had a Commissioner's Deed to the lands. At this date Dade County's claim is principally predicated upon the language in the agreement between the Trustees and Aerojet although its specific right to the lands is alleged to be statutory.

■ It is the view of this Court, first of all, that Dade County though not a party of record in the first proceeding, was in such close relationship to the parties to the first lawsuit before this Court, that its interests or the interests of those which it represents, were represented in that proceeding.

■ The principles of law recognized by the Supreme Court in Chicago, R. I. & P. Ry. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757 (1926), are persuasive in this matter. The *Schendel* doctrine is a corollary of the doctrine of privity under which a person whose interest was validly represented in a suit is bound by the resulting judgment even though he was not a party to the suit. *Schendel, supra,* at 620, 46 S.Ct. 420. See also Moore's Federal Practice, Vol. IB, § 0.411(3), p. 1423 and Restatement of Judgments § 80b (1942). It is clear that the Trustees, as they are charged to do, were contemplating and acting on behalf of the people of the State of Florida in the first proceeding before this Court. The third defense offered by the Trustees in their answer to the complaint recited the fact of this representation. Dade County, who can only purport to be representing the same inter-

ests, i. e., of people in Florida living in Dade County, seeks to allege that these interests are either somewhat different or that somehow interests of the people of Dade County were in conflict with those of the Trustees. Presumably, the "conflict" which the County seeks to interpose arises from the necessity to purchase the lands from the Trustees. First of all, the Court notes that the statute does not specifically require a "purchase price". Secondly, even if such a purchase were contemplated by the statute, the "conflict" argument diminishes into nothingness when considered in view of the "purchase price" agreed upon by the two entities. The conflict is certainly less than a "lion in the path." Nonetheless, the entire argument of differing interests of members of the public seems foreclosed by State ex rel. Walker v. Gessner, *supra*, and Young v. Miami Beach Improvement Co., *supra*.

■ This Court feels that "identity of the parties" is necessitated for a second reason: Since Dade County was a "successor in interest to the same right of property" as that in the Trustees, it cannot be heard now to argue that it did not become bound by the judgment affecting that interest particularly since the County took subsequent to and with knowledge of that proceeding. The policy favoring final settlement of controversies requires that a transferee of property should not be allowed to raise anew questions previously litigated concerning the subject matter of the transfer. Consequently, by traditional concepts of privity, successors to a property interest are bound by judgments in prior litigation concerning that interest. Moyer v. Mathas, 458 F.2d 431 (5th Cir. 1972). The conflicting policy of protecting bona fide purchasers simply is not available here. The County

---

2. The memorandum of the Attorney General of Florida, Earl Faircloth, to the Board of Trustees of Internal Improvement Trust Fund and the Department of Education on October 14, 1969, one week *prior to* the decision of the state boards not to convey the land to Aerojet, specifically indicates that the parties had knowledge of the existence and function of Section 253.111, F.S.A. Obviously the state boards *chose* not to raise it as an affirmative defense.

not only had knowledge of Aerojet's adverse claim but of this Court's order granting Aerojet title at the time it took the deed in question from the Trustees.

For the reasons above mentioned, this Court finds that Dade County was sufficiently in privity with the Trustees such that its claims here are susceptible to the bar of *res judicata*.

## III. EQUITY

For perhaps a third reason this Court is unwilling and unable to favor the claims of Dade County—that is equity. It has been stated:

> "Equity is a roguish thing . . . . Equity is according to the conscience of him that is chancellor, and as that is larger or narrower, so is Equity."

John Selden, Table Talk (1689)

The Court has over the past several years had opportunity to consider the facts of this lawsuit on numerous occasions. Some of these "facts" when viewed in terms of entitlement to equitable relief appear at least of a vexatious quality to this Court. While not in themselves sufficient to serve as a basis for this Court's findings in the foregoing sections, these facts are cognizable before a court sitting in equity and thus will be mentioned in this discussion.

Preliminarily, the Court would note that regardless of how the parties to the original 1961 transaction judge the wisdom of that agreement today, at the time certainly both parties were satisfied with the prospects of the venture. The subsequent failure of the solid rocket fuel industry no doubt raised reasonable concern by the state boards with regard to the continuing validity of the contract and the issues were properly litigated. Those questions were resolved very clearly in favor of Aerojet and the matter of the disputed deed should have rested. In the spirit then of equity the Court would point out these relevant "facts": Dade County was a beneficiary under the original agreement between the state boards and Aerojet. The

County received Two Hundred Thirty One Thousand Dollars ($231,000.00) from Aerojet under paragraph 7 of the lease-option agreement in lieu of ad valorem taxes, yet seeks standing before this Court to contest (and has opposed in the Florida Supreme Court) the very provision in the lease-option agreement making the payments to Dade County a viable venture for Aerojet. The "purchase option" provision is essentially what Aerojet purchased in 1961; Dade County accepted its monies thereunder and now seeks to contest the validity of that provision. Secondly, the Court would point out that the County was in effect made a beneficiary of Section 253.111, F.S.A., in the year 1965. Yet the County did not seek to assert its "rights" thereunder until June 9, 1972, a date two and a half years *after* Aerojet began its litigation with respect to the very interest Dade County claimed. The June 9, 1972, date was also two days after this Court had ordered the deed to the lands issued to Aerojet. Thirdly, in its action before the Florida Supreme Court in June 1972, the County alleged that these lands were "needed and desired by the County for public purposes" and thereby sought to invoke the Section 253.111, F.S.A., language. But even at this date the County has not complied with the obligation incumbent upon it by the very statute which it seeks to impose upon others. The record in this case does not reflect any decisions on the part of the Dade County commissioners with regard to the particular public "use" to be made of the land in question nor has there been a tentative plan of development or timetable produced as evidence of compliance with the statute. Indeed this Court has been furnished no evidence that the state ever notified Dade County of the availability of the lands subsequent to the enactment of the statute. All of these factors can suggest only of the inapplicability of the Section 253.111, F.S.A.

Most significantly, perhaps, the Court would point out that pursuant to the ini-

tial agreement Aerojet undertook a Twenty One Million Dollar ($21,000,-000.00) capital investment. At least Two Million Dollars ($2,000,000.00) of such investment was invested in buildings and equipment on the leased lands now in dispute. Additionally, Aerojet's commitment under the agreement called for a purchase price of One Million Two Hundred Forty Six Thousand Three Hundred Eight Dollars ($1,246,308.00) upon its exercise of the option, representing Fifty Dollars ($50.00) per acre. This amount has been hotly contested by the County and the Trustees as being too low. Yet the exact amount of One Million Two Hundred Forty Six Thousand Three Hundred Eight Dollars ($1,246,308.00) was proposed by Dade County and accepted by the Trustees in the sale of the lands between those entities on October 31, 1972. And it is interesting to note that in all of these proceedings there has been no thought of any compensation to Aerojet.

Finally it is important to point out that the briefs in this case have not suggested what steps could be taken by this Court if a decision favorable to Dade County were forthcoming. Essentially Dade County is asking this Court to set aside not only a "local" transaction but a judgment of the Court of Appeals for the Fifth Circuit, which specifically affirmed that transaction. Notwithstanding the legal conclusions of this Court, the dilemma into which this Court is placed by the relief request simply cannot be solved in favor of Dade County. ■ It is the view of the Court that Dade County has no equitable claim for relief. However, even if Dade County did have a legitimate equitable claim it would be of questionable value before this Court which feels bound by the appellate decision in this matter. The Fifth Circuit in Aerojet-General Corporation v. Askew, 453 F.2d 819, 836 (5th Cir. 1971), stated that:

"At this late date, after the plaintiff has in good faith made the required payments and dispatched the required notices of election necessary to exercise its option to purchase, we hold that Aerojet is entitled to prevail in the absence of specific charges of 'actual fraud, misconduct, favoritism, prejudice, or discrimination' ".

This Court would agree. It is therefore,

Ordered:

1. The motion of Dade County for summary judgment be and it is hereby denied.

2. The motion of Aerojet to dismiss the quiet title suit, Tallahassee Civil Action No. 73–33, be and it is hereby granted; the complaint in that action filed on behalf of Metropolitan Dade County is hereby dismissed with prejudice to Metropolitan Dade County.

3. The motion of Aerojet for summary judgment be and it is hereby granted. In the absence of a genuine dispute of material fact and Aerojet being entitled to relief as a matter of law, summary final judgment is hereby entered in favor of Aerojet-General Corporation and against the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida and the Commissioners of Metropolitan Dade County as and constituting the Board of County Commissioners of Metropolitan Dade County, Florida.

4. Pursuant to Paragraph 3 above, the instrument entitled "Deed No. 25347", dated October 31, 1972, from the Trustees to Metropolitan Dade County, encompassing the same lands described in this Court's Commissioner's Deed of June 20, 1972, is null and void and of no force or effect. Said Deed shall forthwith be delivered to the Clerk of this Court to be held pending further order of this Court.

5. The funds of Dade County heretofore paid and delivered to the Trustees on or about October 31, 1972, in exchange for the aforesaid instrument entitled "Deed No. 25347" shall be returned and refunded by the Trustees to Dade County.

6. Title to said lands described in the Commissioner's Deed of June 20, 1972, to Aerojet is hereby confirmed.

7. This Court retains jurisdiction of the action styled above and numbered Tallahassee Civil Action 1831 and of all of the parties to Tallahassee Civil Action 1831 and their successors in office or interest, to protect and effectuate this judgment and order.

8. The preliminary injunction heretofore entered by this Court on March 8, 1973, *nunc pro tunc* as of October 31, 1972, in Case No. 1831 be and it is hereby vacated and dissolved.