511 F.2d 710
 AEROJET-GENERAL CORPORATION, Plaintiff-Appellee,
v.
Reubin O'Donovan ASKEW, Governor of State of Florida, et
al., Defendants.
Metropolitan Dade County, Florida, et al., including its
Board of CountyCommissioners and Stuart Simon, its
County Attorney, Defendants-Appellants.
 No. 74--1192.
 United States Court of Appeals,
Fifth Circuit.
 April 21, 1975.
Rehearing and Rehearing En Banc
Denied May 30, 1975.
 
 Stuart Simon, Dade County Atty., Alan T. Dimond, Asst. County Atty., Thomas C. Britton, Lawrence R. Metsch, Miami, Fla., Barry S. Richard, Deputy Atty. Gen., Dept. of Legal Affairs, William L. Rogers, Asst. Atty. Gen., Tallahassee, Fla., Marion E. Sibley, Sp. Asst. Atty. Gen., Miami Beach, Fla., for defendants-appellants.
 George W. Wright, Jr., Karl B. Block, Jr., Fred N. Kellner, Miami, Fla., James Wm. Moore, New Haven, Conn., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before BELL, AINSWORTH and RONEY, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 Important questions concerning the doctrine of res judicata and the Contract Clause of the United States Constitution are presented in this much-litigated dispute over title to a large tract of land in Dade County, Florida. The judgment appealed from is the result of two lawsuits. Aerojet-General Corporation brought an action in the United States District Court for the Northern District of Florida against Metropolitan Dade County, Florida, the Board of Trustees of the Internal Improvement Trust Fund (a Florida state agency), and the Board of Education of the State of Florida, seeking declaratory and injunctive relief to prevent defendants from instituting prosecuting suits in Florida state courts to deny Aerojet's title to the land involved. Jurisdiction was asserted on the basis of diversity of citizenship and the existence of a federal question. See 28 U.S.C. §§ 1331, 1332. The second suit was filed by Metropolitan Dade County against Aerojet-General Corporation in a Florida state district court to quiet title to the subject land. It was removed to the United States District Court for the Southern District of Florida by Aerojet on allegations of diversity of citizenship and existence of a federal question. See 28 U.S.C. § 1441. Subsequently the case was transferred to the Northern District. The suits were then consolidated and reciprocal motions for summary judgment were filed by the parties, there being no dispute as to the material facts. The District Court rendered judgment in favor of Aerojet, confirming its title to the land involved. 366 F.Supp. 901 (1973). Only Dade County has appealed. We affirm.
 
 I. Background of the Present Appeal
 
 2
 On December 21, 1961, plaintiff Aerojet-General Corporation entered into a written agreement with the Board of Trustees of the Internal Improvement Trust Fund and the Board of Education of the State of Florida[1] by which Aerojet was granted a ten-year leasehold in 25,313 acres of land in Dade County, Florida, and an option to purchase the land for $50 per acre at any time during the term of the lease, subject to certain qualifications.[2]
 
 
 3
 In 1965 the Florida State Legislature enacted a statute requiring that the Trustees, upon deciding to sell stateowned land to private parties, first afford an opportunity to the county in which the land is located to receive such lands. F.S.A. § 253.111 (1975).[3] On September 8, 1969, Aerojet notified the Trustees of its intention to exercise its option to purchase the leased property, but the Trustees refused to convey the land to Aerojet as provided in the agreement.
 
 
 4
 Aerojet then brought a diversity suit against the Trustees and the Board of Education in the United States District Court for the Northern District of Florida seeking specific performance of the option agreement to purchase the land. The principal defense was failure of consideration in that Aerojet's manufacturing plant built on the land involved was not in full operation but was in inactive status due to the current slowdown in solid fuel rocket development. The defendant state boards did not, however, raise as a defense their obligation to the counties under the 1965 Florida statute (F.S.A. § 253.111) in disposing of state lands. On September 21, 1970, the District Court granted Aerojet's motion for summary judgment, Aerojet-General Corporation v. Kirk, N.D.Fla., 1970, 318 F.Supp. 55, and ordered the defendants to convey the land to Aerojet. The defendant state boards appealed, and we affirmed the judgment of the District Court on December 9, 1971. 5 Cir., 453 F.2d 819, cert. denied, 409 U.S. 892, 93 S.Ct. 110, 34 L.Ed.2d 149 (1972).
 
 
 5
 On June 20, 1972, because of the state boards' failure to transfer title in the land to Aerojet, the District Court appointed the Clerk of the United States District Court for the Southern District of Florida as a Commissioner for the purpose of executing a deed to the land in favor of Aerojet. The deed was executed immediately, and Aerojet transmitted a cashier's check for $1,246,308.88 in payment thereof to the Trustees.
 
 
 6
 Earlier, on June 9, 1972, defendant-appellant Metropolitan Dade County, Florida brought a mandamus action in the Supreme Court of Florida against the state boards to compel them to convey the land to it, based on the 1965 enactment of the Florida Legislature requiring that public lands be offered first to the local county before being sold to private parties. F.S.A. § 253.111 (1975). The County alleged that any right which Aerojet had to acquire the land was superseded by the County's right under the Florida statute. The state boards offered no opposition to this suit, and even more, by written pleading waived notice of hearing and affirmatively consented to the entry of the alternative writ of mandamus. Accordingly, the Supreme Court of Florida issued the requested writ of mandamus on October 11, 1972, and the Trustees, in compliance therewith, executed a deed to the land to Dade County on October 31, 1972.
 
 
 7
 On June 20, 1972, the same day that the District Court appointed the Clerk as a Commissioner to execute the deed to the land to Aerojet, the present action was initiated in the District Court by Aerojet against the state boards and Dade County. Aerojet sought an injunction against further prosecution of the mandamus action by Dade County against the state boards in the Florida Supreme Court and against any other actions regarding the disputed lands, on the ground that any assertion of rights under F.S.A. § 253.111 was barred by the prior federal court judgment under the principle of res judicata. Alternatively, Aerojet sought a judgment declaring that F.S.A. § 250.111 was inapplicable to its lease-option contract--or if applicable, was violative of the Contract Clause of the United States Constitution.
 
 
 8
 The defendants' response to Aerojet's plea of res judicata was that, since federal jurisdiction had been invoked on the basis of diversity of citizenship, the District Court was obliged to follow state law. Defendants contended that the Florida Supreme Court's decision in their mandamus action was the definitive statement of Florida law on whether the prior federal court judgment was res judicata. They argued that the state court could not have reached the question whether F.S.A. § 253.111 required that the County be offered the land without implicitly holding that the prior federal court suit was not a bar, at least as to the County.
 
 
 9
 On October 31, 1972, the day the Trustees executed the deed to the land in favor of Dade County, Aerojet and the County appeared before the District Court at an emergency hearing. The Court enjoined Dade County from recording its newly acquired deed and from instituting any action to quiet title to the property, and enjoined Aerojet from conveying any part of the disputed land.
 
 
 10
 On January 8, 1973, the District Court stayed further proceedings in Aerojet's suit for injunctive and declaratory relief and abstained from further action in anticipation of clarification by the state courts of Florida of the statutory issues involved in the case. Aerojet immediately appealed to this Court from the entry of this order. On January 10, 1973, Dade County, no longer under a prohibitory injunction from the federal district court, initiated its quiet title suit in Florida state court against Aerojet, which, as we have already stated, was later removed by Aerojet to the United States District Court for the Southern District of Florida.
 
 
 11
 On March 5, 1973, this Court rendered its decision on Aerojet's appeal from the District Court's order, and held that in view of Aerojet's removal of the County's quiet title suit there was no longer any reason for abstention. 476 F.2d 184. The District Court was ordered to reinstate its injunction against suits challenging Aerojet's title and to proceed with the merits of Aerojet's claims. (The Court also suggested that the quiet title suit be transferred to the Northern District to be consolidated with Aerojet's suit--which, as we have said, was done.)
 
 
 12
 On November 21, 1973, the District Court rendered its decision in favor of Aerojet. Aerojet-General Corporation v. Askew, N.D.Fla., 1973, 366 F.Supp. 901. The Court held that F.S.A. § 253.111 unconstitutionally impaired the obligation of contract as applied to Aerojet's contract, and that under the doctrine of res judicata the original federal court judgment of September 21, 1970 barred all the defendants from asserting the provisions of F.S.A. § 253.111 as a defense to Aerojet's action to effectuate the prior judgment.
 
 
 13
 II. Res Judicata and the Prior Federal Court Judgment
 
 A. Choice of Law: Federal or State
 
 14
 The District Court apparently conceded that the Florida law of res judicata governs the question whether the prior federal court judgment (rendered on September 21, 1970) barred Dade County from raising the provisions of F.S.A. § 253.111 as a defense in the action by Aerojet to effectuate that judgment. We hold, however, that federal rather than state standards are applicable.
 
 
 15
 Federal law clearly governs the question whether a prior federal court judgment based on federal question jurisdiction is res judicata in a case also brought, as this one was, under federal question jurisdiction. We believe the same result obtains where, as in this case, the first suit was brought only under diversity jurisdiction. The federal doctrine of res judicata bars relitigating any part of the cause of action in question, including all claims and defenses that were actually raised or could have been raised.[4] The forum state's law may be narrower than federal law on the scope of the cause of action deemed to be adjudicated for purposes of res judicata. In cases where both state law issues and federal questions are presented, if the narrower state law were applicable a party could split his cause of action and thus circumvent the federal law of res judicata, simply by not pleading his federal claim or defense. See Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). In any subsequent federal court litigation, the prior case would appear to have been based only on diversity jurisdiction if the pleadings alone were considered. Looking beyond the pleadings to what could have been pleaded, however, is precisely what is required by the federal law of res judicata, and precisely what was called for in this case. The state boards could have pleaded a defense that would have brought a federal question directly into the case: their alleged obligation to Dade County under F.S.A. § 253.111.[5] The fact that only questions of state law were actually pleaded and litigated in the prior federal court case cannot justify such frustration of the federal law of res judicata.
 
 
 16
 In Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), the Court held that state law governs whether a state court judgment is res judicata in a subsequent federal diversity case. The Court noted, however, that 'where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State.' 330 U.S. at 192, 67 S.Ct. at 662. See Metropolitan Paving Co. v. International U. of Op. Eng., 10 Cir., 1971, 439 F.2d 300, 307; Pearlstein v. Scudder & German, 2 Cir., 1970, 429 F.2d 1136, 1144 n. 14; Williams v. Ocean Transport Lines, Inc., 3 Cir., 1970, 425 F.2d 1183, 1187--1190. The same reasoning must apply where the prior case is not brought in a state court but rather in a federal court under diversity jurisdiction.
 
 
 17
 Considering this case solely in its diversity aspect also leads us to the conclusion that the federal law of res judicata should be applied. The importance of preserving the integrity of federal court judgments cannot be overemphasized--out of respect for the federal courts and for the policy of bringing litigation conclusively to an end. If state courts could eradicate the force and effect of federal court judgments through supervening interpretations of the state law of res judicata, federal courts would not be a reliable forum for final adjudication of a diversity litigant's claims.[6] Nullification of a federal court judgment would be precisely the result in this case if, as Dade County urges, the District Court had been obliged to follow state law to decide the question of res judicata. Absent other reasons for declining to follow the mandamus judgment of the Florida Supreme Court,[7] that decision would have compelled the District Court to hold that the prior federal court judgment was not res judicata as to Dade County's assertion of F.S.A. § 253.111 as a defense.
 
 
 18
 Our research reveals only one case in which this choice of law issue has been discussed at any length. In Kern v. Hettinger, 2 Cir., 1962, 303 F.2d 333, the Second Circuit held that the question whether a federal court diversity judgment is res judicata must be determined according to federal law in a subsequent federal diversity case. We agree with the reasoning in that case:
 
 
 19
 One of the strongest policies a court can have is that of determining the scope of its own judgments. (Citations omitted) It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity. The rights and obligations of the parties are fixed by state law. These may be created, modified and enforced by the state acting through its own judicial establishment. But we think it would be strange doctrine to allow a state to nullify the judgments of federal courts constitutionally established and given power also to enforce state created rights. The Erie doctrine (citations omitted) is not applicable here . . ..
 
 303 F.2d at 340.[8]
 
 20
 A second reason for applying federal law under these circumstances is that several procedural elements of federal practice affect the doctrine of res judicata. For example, federal law on finality of judgments, see 28 U.S.C. § 1291 (1971), and compulsory counterclaims, Fed.R.Civ.P. 13(a), is often determinative of pleas of res judicata. See Fed.R.Civ.P. 41(a); La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc., 2 Cir., 1974, 495 F.2d 1265, 1275. We see no persuasive reason to look to state law for some elements of res judicata, such as the scope of the cause of action or similarity of the parties, in light of the prominent influence of federal law on other elements of the doctrine. To do so would sacrifice the uniformity of the law which federal courts must apply. See generally, United States v. United Air Lines, Inc., E.D.Wash., 1962, 216 F.Supp. 709, 718--721, aff'd sub nom. United Air Lines, Inc. v. Wiener, 9 Cir., 1964, 335 F.2d 379, 404; Hughes v. Dundee Mortgage & Trust Investment Co., D.Or., 1886, 28 F. 47; 1B Moore's Federal Practice 0.410(1).
 
 
 21
 We are aware of the importance of honoring the obligation to follow substantive law in diversity cases,[9] but as the Supreme Court has stated in a similar context, 'there are affirmative countervailing considerations at work here. The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction.' Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 537, 78 S.Ct. 893, 901, 23 L.Ed.2d 953 (1958). In this lawsuit, whether considered as a federal question case or a diversity case, we believe such considerations are present.
 
 
 22
 B. Application of the Federal Law of Res Judicata to this Case
 
 
 23
 1. Scope of the cause of action. Under the federal law of res judicata a party must raise all claims that are a part of or a defense to the cause of action under adjudication. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927); Southwest E & T Suppliers, Inc. v. American Enca Corp., 5 Cir., 1972, 463 F.2d 1165, 1167; see Wasoff v. American Automobile Insurance Co., 5 Cir., 1971, 451 F.2d 767, 769 & n. 8; Astron Industrial Associates Inc. v. Chrysler Motors Corp., 5 Cir., 1968,405 F.2d 958, 961--962; Acree v. Air Line Pilots Association, 5 Cir., 1968,390 F.2d 199, 203; Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 5 Cir., 1961, 295 F.2d 362, 363--364; 1B Moore's Federal Practice 0.401, at 12--13. Our most recent discussion of the tests for determining whether the substance of two actions is the same for res judicata purposes appears in the Astron case, supra:
 
 
 24
 Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence sustain both judgments?
 
 
 25
 405 F.2d at 961--962. Under any of these questions, the defense Dade County offers in this suit, the alleged superseding effect of F.S.A. § 253.111, is part of the same subject matter adjudicated in Aerojet's original suit for specific performance.
 
 
 26
 The constitutionality of F.S.A. § 253.111 as applied to Aerojet's contract was not raised by the defendant Florida state boards in the original suit by Aerojet for specific performance, but clearly it could have been. In October 1969 the Attorney General of Florida advised the state boards of his opinion that F.S.A. § 253.111 applied to the lease-option contract in question. Thus the state boards were fully aware that the Florida statute might possibly offer them a defense. They chose not to raise that defense and must now accept the consequences of their decision.
 
 
 27
 2. The doctrine of virtual representation. Dade County concedes that the prior federal court judgment bars the state boards from now raising the defense that F.S.A. § 253.111 obligates them to offer the land to the County. It contends, however, that since it was not a party to Aerojet's original suit, the interests of the state boards were too distinct to permit the conclusion, reached by the District Court, that they were the virtual representative of the County.
 
 
 28
 Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. See Chicago, R.I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 618, 46 S.Ct. 420, 423, 70 L.Ed. 757 (1926); Heckman v. United States, 224 U.S. 413, 445--446, 32 S.Ct. 424, 434--435, 56 L.Ed. 820 (1912); Kerrison v. Stewart, 93 U.S. 155, 160, 23 L.Ed. 843, 845 (1876); Dudley v. Smith, 5 Cir., 1974, 504 F.2d 979, 982; Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 5 Cir., 1968, 405 F.2d 958, 961; Kreager v. General Electric Company, 2 Cir., 1974, 497 F.2d 468, 472; Pan American Match, Inc. v. Sears, Roebuck and Co., 1 Cir., 1972, 454 F.2d 871, 874; Robison v. Sidebotham, 9 Cir., 1957, 243 F.2d 16, 21; Jamison v. Garrett, 1953, 92 U.S.App.D.C. 232, 205 F.2d 15, 16; United States v. City of Philadelphia, 3 Cir., 1944, 140 F.2d 406, 408; United States v. Des Noines Valley R. Co., 8 Cir., 1897, 84 F. 40. Cf. Spokane & I.E.R. Co. v. Whitley, 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060 (1915); Troxell v. Delaware L. & W.R. Co., 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586 (1913). Dade County asserts that it was in the state boards' best interest to keep the land, rather than convey it to either Aerojet or the County, and therefore it would have been against their interests to raise F.S.A. § 253.111 as a defense to Aerojet's specific performance suit. Assuming this assertion to be true, we nevertheless believe the interests of the state boards and the County were closely aligned.
 
 
 29
 The state boards could have retained the disputed land only by persuading the District Court that they were not under any contractual obligation to convey the land to Aerojet. Failing that, their only options were to convey the land to Aerojet or to convince the District Court that they had an overriding obligation to offer the land to Dade County, pursuant to F.S.A. § 253.111.
 
 
 30
 Clearly the state boards preferred to transfer the land to the County rather than to Aerojet. Their submissive role in the Florida state court mandamus proceeding amply demonstrates that preference. The statute required the state boards to offer the land to the appropriate county only if they decided to sell the land at all--only if the lease-option contract with Aerojet was valid. It would not have prejudiced their alleged interest to raise F.S.A. § 253.111 as an alternative to their defense that the lease-option contract was not valid.[10]
 
 
 31
 The question whether a party's interests in a case are virtually representative of the interests of a nonparty is one of fact for the trial court. See Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 5 Cir., 1968, 405 F.2d 958, 961. We find no reason to overturn the District Court's determination that Dade County 'was in such close relationship to the parties to the first lawsuit before this Court, that its interests or the interests of those which it represents, were represented in that proceeding.' 366 F.Supp. at 910.
 
 
 32
 III. Interpreting the Lease-Option Contract and the Florida Statute
 
 
 33
 The District Court concluded that the lease-option contract between Aerojet and the state boards did not contemplate the application of F.S.A. § 253.111 and that the statute could not be constitutionally applied to the contract. The District Court also held that the decision of the Florida Supreme Court in the mandamus action by Dade County was not controlling because of the nonadversary circumstances of that litigation. We believe the District Court's decision was correct.
 
 A. The Judgment of the Florida State Court
 
 34
 The writ of mandamus issued by the Supreme Court of Florida in favor of Dade County against the state boards rested explicitly upon the conclusion that the contract between Aerojet and the state boards was intended to permit modification by subsequent statute, such as F.S.A. § 253.111. The Florida state court judgment, like any judgment of a court of competent jurisdiction, is entitled to a presumption of regularity. See Webster v. Estelle, 5 Cir., 1974, 505 F.2d 926, 928. The presumption, however, can be overcome by evidence that the judgment is the product of a nonadversary proceeding. In Lord v. Veazie, 8 How. 251, 49 U.S. 251, 255--256, 12 L.Ed. 1067, 1069 (1850), the Supreme Court refused to hear an appeal from a circuit court because
 
 
 35
 the plaintiff and defendant have the same interest, and that interest (is) adverse and in conflict with the interest of third persons, whose rights would be seriously affected if the question of law was decided in the manner that both parties to this suit desire it to be.
 
 
 36
 A judgment entered under such circumstances, and for such purposes, is a mere form. The whole proceeding was in contempt of the court, and highly reprehensible, and the learned district judge, who was then holding the Circuit Court, undoubtedly suffered the judgment pro forma to be entered under the impression that there was in fact a controversy between the plaintiff and defendant, and that they were proceeding to obtain a decision upon a disputed question of law, in which they had adverse interests. A judgment in form, thus procured, in the eye of the law is no judgment of the court.
 
 
 37
 See United States v. Johnson, 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943); Chicago & G.T. Ry. Co. v. Wellman, 143 U.S. 339, 12 S.Ct. 400, 36 L.Ed. 176 (1892); Chamberlain v. Cleveland, 66 U.S. 419, 17 L.Ed. 93 (1862); Waialua Agr. Co. v. Maneja, 9 Cir., 1949, 178 F.2d 603.
 
 
 38
 Federal courts have declined to follow nonadversary decisions of state courts as well as federal courts. In federal taxation cases the federal courts have not considered themselves bound by collusive state court judgments--'collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax.' Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 312, 78 L.Ed. 634 (1934). See Stallworth's Estate v. Commissioner of Internal Rev., 5 Cir., 1958, 260 F.2d 760, 763; Saulsbury v. United States, 5 Cir., 1952, 199 F.2d 578, 580; In re Estate of Abely, 1 Cir., 1974, 489 F.2d 1327, 1328; Pierpont v. C.I.R., 4 Cir., 1964, 336 F.2d 277, 281; Peyton's Estate v. C.I.R., 8 Cir., 1963, 323 F.2d 438, 443--444; Faulkerson's Estate v. United States, 7 Cir., 1962, 301 F.2d 231, 232; M. T. Straight's Trust v. Commissioner of Internal Rev., 8 Cir., 1957, 245 F.2d 327, 329; Merchants National Bank & Trust Co. v. United States, 7 Cir., 1957, 246 F.2d 410, 418; In re Sweet's Estate, 10 Cir., 1956, 234 F.2d 401, 404; Wolfsen v. Smyth, 9 Cir., 1955, 223 F.2d 111, 113--114. Cf. United States v. Farish, 5 Cir., 1966, 360 F.2d 595, 596; Flitcroft v. C.I.R., 9 Cir., 1964, 328 F.2d 449, 454; Darlington's Estate v. C.I.R., 3 Cir., 1962, 302 F.2d 693, 694--695; Pitts v. Hamrick, 4 Cir., 1955, 228 F.2d 486, 491; Callagher v. Smith, 3 Cir., 1955, 223 F.2d 218, 224; Eisenmenger v. Commissioner of Internal Revenue, 8 Cir., 1944, 145 F.2d 103, 107; Nashville Trust Co. v. Com'r of Internal Revenue, 6 Cir., 1943, 136 F.2d 148, 150--151; 151; Bullard v. Commissioner of Internal Revenue, 7 Cir., 1937, 90 F.2d 144, 147.[11] See contra, C.I.R. v. Estate of Bosch, 2 Cir., 1966, 363 F.2d 1009.
 
 
 39
 In United States v. Harrison County, Mississippi, 5 Cir., 1968, 399 F.2d 485, we declined to give effect to a decision of the Mississippi Supreme Court concerning title to disputed lands, in part because the decision was in apparent conflict with the Mississippi Constitution. This Court stated, 'We assume that this provision was not called to the attention of the Supreme Court of Mississippi, as it is not discussed in the opinion.' 399 F.2d at 491. If the absence of any discussion concerning an issue in a case is grounds for declining to follow a state court judgment, the lack of an adversary relationship between the parties is also grounds. See Gilmore v. Greene County Democratic Party Exec. Com., 5 Cir., 1966, 370 F.2d 919, 920; Meredith v. City of Winter Haven, 5 Cir., 1944, 141 F.2d 348, on remand from 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).
 
 
 40
 Dade County points out that the Gilmore and Harris County cases were not diversity cases and are therefore inapplicable. The present case is not a simple diversity case either, being brought under 28 U.S.C. § 1331 (1971) (federal question jurisdiction) as well as section 1332. In any event, we believe that a federal court must insure that its judgments are based only on sound authority established through a truly adversary proceeding.
 
 
 41
 Respect for the integrity of the courts of the states requires that the federal courts exercise great caution in questioning the nonadversary nature of a state court proceeding. In the present case, however, the Deputy Attorney General of Florida admitted to the District Judge that the relationship between the state boards and Dade County was not an adversary one in the state court mandamus action.[12] Under the circumstances, we are not obliged to follow the state court decision in favor of Dade County.
 
 
 42
 B. The Meaning of Aerojet's Lease-Option Contract
 
 
 43
 1. Inapplicability of the Erie doctrine. Irrespective of the nonadversary nature of the state court proceeding, the meaning of the contract between Aerojet and the Trustees is not controlled by state law, because a violation of the Contract Clause has been alleged, and 'the existence of the contract and the nature and extent of its obligation become federal questions . . .' Irving Trust Co. v. Day, 314 U.S. 556, 561, 62 S.Ct. 398, 401, 86 L.Ed. 452 (1942). See State v. Sims, 341 U.S. 22, 28--29, 71 S.Ct. 557, 560--561, 95 L.Ed. 713 (1951); Atlantic Coast Line R. Co. v. Phillips, 332 U.S. 168, 170, 67 S.Ct. 1584, 1585, 91 L.Ed. 1977 (1947); Higginbotham v. City of Baton Rouge, La., 306 U.S. 535, 538--539, 59 S.Ct. 705, 706, 83 L.Ed. 968 (1939); Coombes v. Getz, 285 U.S. 434, 441, 51 S.Ct. 435, 436, 76 L.Ed. 866 (1932); Larson v. State of South Dakota, 278 U.S. 429, 433, 49 S.Ct. 196, 197, 73 L.Ed. 441 (1929); Appleby v. City of New York, 271 U.S. 364, 379--380, 46 S.Ct. 569, 573, 70 L.Ed. 992 (1926); Cone v. Rorick, 5 Cir., 1940, 112 F.2d 894, 897; Florida Power & Light Co. v. City of Miami, 5 Cir., 1938, 98 F.2d 180, 181.[13]
 
 
 44
 2. The terms of the agreement. Paragraph 8(a) of the lease-option contract between Aerojet and the Trustees describes in relevant part Aerojet's option to purchase the disputed land:
 
 
 45
 Upon the election of Lessee (Aerojet), the total amount of the purchase price to be determined, as aforesaid, shall be paid to Lessor simultaneously with delivery to Lessee of a deed to said lands vesting good and merchantable fee simple title thereto in Lessee subject to applicable statutory rights and reservations in effect on date of conveyance.
 
 
 46
 (Emphasis added.)
 
 
 47
 Dade County contends that this clause reserved to the State of Florida the right to affect Aerojet's contract rights by subsequent legislation. It is elementary contract law, however, that a contract should not be construed to yield absurd results:
 
 
 48
 If one interpretation would lead to an absurd conclusion, then such interpretation should be abandoned and the one adopted which would be in accord with reason and probability. (citations omitted) If the language of a contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary, and such as a prudent man would naturally execute, while the other interpretation would make it unequitable, unnatural, or such as a reasonable man would not be likely to enter into, then the reasonable, logical and rational interpretation should be adopted.
 
 
 49
 Florida Power Corporation v. City of Tallahassee, 154 Fla. 638, 18 So.2d 671, 674 (1944); see Pritchard v. Norton, 106 U.S. 124, 137, 1 S.Ct. 102, 112, 27 L.Ed. 104 (1882) ('The parties (to a contract) cannot be presumed to have contemplated a law which would defeat their engagements.'); Insurance Company of North America v. Stevens, 5 Cir., 1970, 425 F.2d 704, 705; Connecticut General Life Insurance Company v. Craton, 5 Cir., 1968, 405 F.2d 41, 47--48; Motor Vehicle Casualty Co. v. Atlantic National Ins. Co., 5 Cir., 1967, 374 F.2d 601, 605. It would be unreasonable to hold that a party would give valuable consideration for an option to purchase which could be nullified at will by the state legislature.
 
 
 50
 A much sounder interpretation of clause 8 of the contract is that it refers to F.S.A. § 270.11 (1975),[14] which provided for the reservation of certain interests in phosphate, minerals, metals, gas, and oil. In January 1962, Aerojet requested an interpretation of clause 8 of the lease agreement from the Attorney General of Florida. His reply states, 'The statutory rights and reservations referred to in the subject portion of this lease with option to purchase are those contemplated in Section 270.11, Florida Statutes.'
 
 C. Interpretation of F.S.A. § 253.111
 
 51
 1. Statutory construction. Ordinarily we would defer to a state court construction of a state statute. The only available state court construction of F.S.A. § 253.111, however, is the decision in the mandamus action brought by Dade County against the state boards. For the reasons discussed earlier, this nonadversary decision does not bind us in the present case.
 
 
 52
 The Florida Supreme Court focused on the introductory paragraph of F.S.A. § 253.111, which reads:
 
 
 53
 The board of trustees of the internal improvement trust fund of the state shall not sell or convey any land to which they hold title unless and until they shall afford an opportunity to the county in which such land is situated to receive such land for public purposes . . ..
 
 
 54
 Subparagraph (1) of the section, however, clearly states that the statutory obligation to offer the appropriate county any land the trustees shall sell arises prospectively only:
 
 
 55
 If an application is filed with the board requesting that they sell certain land to which they hold title and the board shall decide to sell such land or if the board shall, without such application, decide to sell such land the board shall, before consideration of any private offers, notify the board of county commissioners of the county in which such land is situated that such land is available to such county.
 
 
 56
 (Emphasis added.) In this case the state boards decided to sell the disputed land, by their lease-option agreement with Aerojet in 1961, long before F.S.A. § 253.111 was enacted. Thus they could not possibly have complied with the subsequently enacted provision of F.S.A. § 253.111. There is nothing to indicate that the Florida legislature intended this law to apply retroactively or to interfere with existing contracts.
 
 
 57
 2. The Contract Clause issue. Our belief in the correctness of our interpretation of F.S.A. § 253.111 is reinforced by the certainty that if the statute were construed to apply to Aerojet's contract it would violate Article I, Section 10 of the United States Constitution, which declares that no state shall pass any 'Law impairing the Obligation of Contracts.' See Wood v. Lovett, 313 U.S. 362, 369, 61 S.Ct. 983, 986, 85 L.Ed. 1404 (1941); Appleby v. City of New York, 271 U.S. 364, 382--397, 46 S.Ct. 569, 574--579, 70 L.Ed. 992 (1926); McGuire v. Sadler, 5 Cir., 1964, 337 F.2d 902, 905--906. Any other interpretation would clearly violate the Contract Clause and require us to hold the statute unconstitutional as applied in the circumstances here.
 
 
 58
 Affirmed.
 
 RONEY, Circuit Judge (specially concurring):
 
 59
 I concur in the result reached by Judge Ainsworth's opinion and most of what it says. I have serious doubt as to the decision that the Trustees of the Internal Improvement Fund and Dade County were in such relationship as to make the first lawsuit res judicata as to Dade County. Concurring in the decision that F.S.A. § 253.111 cannot constitutionally prevent the relief granted to Aerojet in this case, however, makes my difference as to the res judicata effect of the first lawsuit of no consequence.
 
 
 
 [1]
 The same state officials are members of both boards: the Governor, Secretary of State, Attorney General, Comptroller, Treasurer, Commissioner of Agriculture, and Commissioner of Education. F.S.A. §§ 229.012, 253.02(1) (1975). These officials are referred to as 'the state boards' in this opinion. Their authority is described in F.S.A. § 253.02(6) (1975)
 
 
 [2]
 See Section III-B, infra
 
 
 [3]
 253.111 Notice to board of county commissioners before sale
 The board of trustees of the internal improvement trust fund of the state shall not sell or convey any land to which they hold title unless and until they shall afford an opportunity to the county in which such land is situated to receive such land for public purposes on the following terms and conditions:
 (1) If an application is filed with the board requesting that they sell certain land to which they hold title and the board shall decide to sell such land or if the board shall, without such application, decide to sell such land the board shall, before consideration of any private offers, notify the board of county commissioners of the county in which such land is situated that such land is available to such county. Such notification shall be given by registered mail, return receipt requested.
 (2) The board of county commissioners of the county in which such land is situated shall, within ninety days after receipt of such notification from the board, determine by resolution whether or not it proposes to devote such land to public parks, public beaches, public fishing piers, public boat ramps, public dockage facilities or other public outdoor recreational purposes, hereinafter referred to generally as public outdoor recreational purposes.
 
 
 [4]
 See Section II--B--1, infra
 
 
 [5]
 Responsibility for raising the constitutional issue--whether F.S.A. § 253.111 violates the Contract Clause--clearly lay with the defendant Trustees in the first federal case, rather than with Aerojet. Indeed Aerojet could not have raised the issue. The Florida statute was a potential defense of the Trustees to the specific performance action and could not have been pleaded in Aerojet's complaint. See Louisville & N.R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)
 
 
 [6]
 The very purpose of federal diversity jurisdiction is to avoid bias against parties from outside the forum state. Guaranty Trust Co. of New York v. York, 326 U.S. 99, at 111, 65 S.Ct. 1464, at 1471, 89 L.Ed. 2079 (1945); Erie R. Co. v. Tompkins, 304 U.S. 64, at 74, 58 S.Ct. 817, at 820, 82 L.Ed. 1188 (1938); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 347, 4 L.Ed. 97, 108 (1816); The Bank of the United States v. Deveaux, 9 U.S. (5 Cr.) 61, 87, 3 L.Ed. 38, 45 (1809). To permit Dade County to nullify a prior federal court judgment rendered in favor of Aerojet, an out-of-state party, through subsequent state court action would fly in the face of that purpose
 
 
 [7]
 The District Court apparently believed that, under Erie, state law governed the question whether the prior federal court judgment was res judicata. It concluded nevertheless that the mandamus granted by the Florida Supreme Court need not be followed because it was based on a nonadversary proceeding. See Section III--A, infra
 
 
 [8]
 See In re Air Crash Disaster, Dayton, Ohio, On March 9, 1967, S.D.Ohio, 1972, 350 F.Supp. 757, 762--764; Hassenplug v. Victor Lynn Lines, E.D.Pa., 1947, 71 F.Supp. 70, aff'd 3 Cir., 1947, 163 F.2d 828; Moore's Federal Practice 0.316(6). Contra Blum v. William Goldman Theaters, 3 Cir., 1949, 174 F.2d 914; Hartmann v. Time, 3 Cir., 1948, 166 F.2d 127. Despite occasional dicta suggesting that state law may govern res judicata in diversity cases, the only cases that have so held are Blum and Hartmann, supra. See Murphy v. Landsburg, 3 Cir., 1973, 490 F.2d 319, 322 n. 4; Provident Tradesmens B & T Co. v. Lumbermens Mut. Cas. Co., 3 Cir., 1969, 411 F.2d 88, 94; Kimmel v. Yankee Lines, 3 Cir., 1955, 224 F.2d 644. Those cases contain virtually no discussion of the choice of law problem, and we decline to follow them. Cf. 19 A.L.R.Fed. 709
 The Fourth Circuit has taken the same approach to federal-state choice of law problems as expressed by the Second Circuit in Kern. Atkins v. Schmutz Manufacturing Company, 4 Cir., 1970, 435 F.2d 527, presented the question whether state or federal law controlled whether the filing of one diversity action tolled the applicable statute of limitations as to another diversity action filed in a different District Court. In holding that federal law applies, Judge Haynsworth wrote:
 It is, of course, neither possible nor necessary for federal courts to be totally neutral in the adjudication of state-created rights. It is not possible simply because federal courts are not protean and are unable to transform themselves into exact replicas of their state counterparts. That state and federal judicial systems are not identic will inevitably mean that the choice of forum will have some effect upon the course of litigation. Some adoption of state court procedures by federal courts sitting in diversity may be feasible, but it may also be in conflict with fundamental interests of the federal courts in the conduct of their own business and the maintenance of the integrity of their own procedures, the legitimate interests of a federal forum, qua forum.
 435 F.2d at 536.
 Breeland v. Security Insurance Co. of New Haven, Conn., 5 Cir., 1969, 421 F.2d 918, cited by the County, and Berner v. British Commonwealth Pacific Airlines, Ltd., 2 Cir., 1965, 346 F.2d 532, are inapposite. Those cases concerned collateral estoppel--in Breeland the collateral effect of a criminal conviction--rather than res judicata. See James Talcott, Inc. v. Allahabad Bank, Ltd., 5 Cir., 1971, 444 F.2d 451, 461 & n. 9; Seguros Tepeyac, S.A., Compania Mexicana v. Jernigan, 5 Cir., 1969, 410 F.2d 718, 725--728; St. Paul Fire and Marine Insurance Company v. Lack, 4 Cir., 1973, 476 F.2d 583, 585--586; Ritchie v. Landau, 2 Cir., 1973, 475 F.2d 151, 154; Greenberg v. Mobil Oil Corporation, N.D.Tex., 1970, 318 F.Supp. 1025, 1032. Moreover in Berner the court found plausible rationales for applying state or federal law, but did not reach the issue in rendering its decision. The application of state law on collateral estoppel cannot nullify a federal court judgment. That doctrine affects only the ancillary consequences of such judgments.
 
 
 [9]
 As we noted earlier, see footnote 6 supra, avoiding state court bias is a major purpose of diversity jurisdiction and an important reason for applying federal law to determine whether a prior federal court diversity judgment is res judicata in a subsequent diversity case. It should be noted that our holding accomplishes that purpose without intruding into the legitimate domain of state law under the Erie doctrine. Where a federal court judgment based on diversity jurisdiction is pleaded as res judicata in state court, the danger of state court bias causing untoward effects on the integrity of federal court judgments is minimal. If bias were a problem one party or the other would have filed the suit in federal court or removed it there. Accordingly, state law has been held to govern whether a federal court diversity judgment is res judicata in a subsequent state court action. See Dupasseur v. Rochereau, 88 U.S. (21 Wall.) 130, 22 L.Ed. 588 (1875); Crescent City, Etc., Co. v. Butchers' Union, Etc., Co., 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887). Where a state court judgment is pleaded as res judicata in a subsequent federal court diversity action, applying state law is also appropriate. propriate. There is little chance of bias against any of the parties or their privies, since the first case has gone to judgment in a state court, rather than being brought in, or removed to, federal court. The federal courts have uniformly applied state law under these circumstances. See Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 8, 60 S.Ct. 215, 217, 84 L.Ed. 447 (1940); Wright v. Georgia R. & B. Co., 216 U.S. 420, 429, 30 S.Ct. 242, 245, 54 L.Ed. 544 (1910); Lynn Carol Fashions, Inc. v. Cranston Print Works Co., 3 Cir., 1972, 453 F.2d 1177, 1182--1184; Anderson v. Moorer, 5 Cir., 1967, 372 F.2d 747, 751--752; Graves v. Associated Transport, Inc., 4 Cir., 1965, 344 F.2d 894, 896; Gedeon v. State Farm Mutual Automobile Insurance Co., 3 Cir., 1965, 342 F.2d 15, 17; Gramm v. Lincoln, 9 Cir., 1958, 257 F.2d 250, 255 n. 6; Standard Acc. Inc. Co. v. Doiron, 1 Cir., 1948, 170 F.2d 206, 208. Cf. Thomas v. Consolidation Coal Company, 4 Cir., 1967, 380 F.2d 69, 79 (federal law applies to determine whether a prior state court judgment is res judicata in a federal court suit under 29 U.S.C. § 185(a) (LMRDA))
 
 
 [10]
 Except for the decision of the Florida Supreme Court in the mandamus suit brought by Dade County against the Trustees, the Florida law of res judicata on the scope of the cause of action and the doctrine of virtual representation is the same as the federal law. See Hinchee v. Fisher, Fla., 1957, 93 So.2d 351, 353; Gordon v. Gordon, Fla., 1952, 59 So.2d 40, 43--44; Wolfson v. Rubin, Fla., 1951, 52 So.2d 344, 346; Young v. Miami Beach Improvement Co., Fla., 1950, 46 So.2d 26, 30; Lockhart v. Dade County, Fla., 1946, 25 So.2d 646, 647 (scope of cause of action); City of New Port Richey v. State, Fla., 1962, 145 So.2d 903, 905--906; Young v. Miami Beach Improvement Co., supra, 46 So.2d at 30; Sauls v. Freeman, Fla., 1888, 24 Fla. 209, 4 So. 525 (identity of parties). Though the District Court should have applied federal law, there is no need to remand. The state court mandamus decision and our reasons for not following it are discussed fully in section III, infra
 
 
 [11]
 The federal courts are not free to disregard a state court judgment simply because both parties have consented to its entry. '(I)t is not necessary that the adjudication be the result of a contest in which one party says yes and another no.' Darlington's Estate v. C.I.R., supra, 302 F.2d at 695. Consent decrees are entitled to the same respect accorded any judgment, so long as the parties' interests being compromised and reconciled in the decree are truly adverse
 
 
 [12]
 The following colloquy occurred during the District Court's hearing on Aerojet's motion for summary judgment:
 THE COURT:
 The facts in this case just don't bear out your statement. I will agree with you that as far as a decision of this Court is concerned what went on between the Attorney General's Office, the Attorney General of Florida and Dade County has nothing whatsoever to do with this case, but don't attempt to make me think that there weren't some shuffling and finagling going on between Dade County and the Attorney General's office. That is impossible for me to fathom.
 MR. RICHARD (Counsel for defendants):
 Your Honor, I would never attempt to tell you that--(.)
 
 
 [13]
 Aaron v. Florida Gas Transmission Company, 5 Cir., 1969, 412 F.2d 802, and Blanton v. Moody, 5 Cir., 1959, 265 F.2d 533, relied on by Dade County, are inapposite. No Contract Clause claim was raised in these cases
 
 
 [14]
 270.11 Contracts for sale of public lands to reserve certain mineral rights in state
 In all contracts and deeds for the sale of land executed by the board of trustees of the internal improvement trust fund, there shall be reserved for the board of trustees and its successors an undivided three fourths interest in, and title in and to, an undivided three fourths interest in all the phosphate, minerals and metals that are or may be in, on, or under the said land and an undivided one half interest in all the petroleum that is or may be in, on, or under said land with the privilege to mine and develop the same. The said board of trustees may in its discretion sell or release said reserved interest in or as to any particular parcel of land when such parcel has a building thereon or on which a building is proposed to be erected, and the state board of education may sell or release any such interest which was reserved for said board pursuant to this section prior to September 1, 1967. Such sale or release shall be made on application of the owner of the title to the particular parcel of land with statement of reason justifying such sale or release.