Dale RUTER, Petitioner, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 347, Respondent.

No. C3-84-1670.

Court of Appeals of Minnesota.

March 26, 1985.

Dennis Neeser, Neeser Law Office, Willmar, for appellant.

Patricia Maloney, Knutson, Flynn & Hetland, St. Paul, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

This is an appeal from an order of the district court affirming a hearing examiner's determination that appellant was properly placed on unrequested leave of absence by the respondent school district. We reverse.

## FACTS

In 1982–83 and for several prior school years, appellant Dale Ruter was employed as a full-time teacher with the Willmar Area Vocational Technical Institute (WAVTI). Ruter was a technical tutor in the special needs department of WAVTI, assisting students who had difficulty with other classes such as welding, drafting, machine shop and mechanics. Ruter was the only technical tutor at WAVTI; the other instructors in the special needs department tutored remedial reading and math.

In 1982 WAVTI was informed that its staff allocation for the special needs department would be reduced for the 1983–84 school year. As a consequence, the director of WAVTI decided to cut Ruter's technical tutor position to comply with the reduced allocation.

Ruter requested a hearing, arguing that because he was also licensed to teach carpentry, he should have been allowed to

replace a tenured teacher[1] in the carpentry department who allegedly had less seniority. At the hearing the school district argued that although Ruter had been hired at WAVTI before the carpentry teacher, Ruter had acquired seniority only in the special needs department and therefore had no seniority in the carpentry department.

The hearing examiner determined that under the negotiated contract Ruter had no right to bump the carpentry teacher. The district court affirmed the hearing examiner's decision.

## ISSUES

1. Did the school district's placement of Ruter on unrequested leave of absence violate the terms of the negotiated contract regarding Ruter's seniority and layoff rights?

2. Should the school district be estopped from placing Ruter on unrequested leave of absence?

## ANALYSIS

### I

The controversy between Ruter and the school district involves the correct interpretation of the terms in the parties' negotiated contract which concern seniority bumping rights and layoffs. The contract provides, in relevant part:

3. Layoffs

    a. In cases of layoffs, the last teacher hired shall be the first laid off.

    b. Layoffs shall be by departmental seniority in the occupational groups.

    *    *    *    *    *    *

4. Bumping rights

    a. Any teacher having more than one area of licensure who is or is about to be placed on unrequested leave shall have the right to take another position for which he/she is licensed, within the

bargaining unit, if that position is held by a non-tenured teacher.

    *    *    *    *    *    *

    c. Teachers who change positions within an occupational group shall retain all seniority acquired while they remain in the bargaining group. Seniority will begin to accrue in the presently held position where the seniority list is maintained by departments.

5. Determination of seniority

    *    *    *    *    *    *

    f. The Seniority List. Seniority shall be within occupational groups. The three occupational groups are elementary, junior and senior high school, and W.A.V.T.I. Seniority in the junior and senior high occupational groups shall be by departments. Elementary and W.A.V.T.I. shall each have a single seniority list. W.A.V.T.I. seniority rights shall be limited by the current licensure at the beginning of each fiscal year, which is July 1. (That is, for a W.A.V.T.I. instructor to take a position, he/she must have a current license to teach that position). Three lists of teachers shall be maintained in the superintendent's office showing the name of the teacher, the first date of employment, date of hire, present position, and other areas of licensure. The teacher shall be placed on the seniority list in his/her present position.

The school district claims that under the above language seniority at WAVTI is accrued by department; thus, Ruter was less senior than a teacher in the carpentry department, since Ruter had accrued seniority only in the special needs department. The school district also argues that even if Ruter were more senior than the carpentry teacher, subdivision 4(a) limits his bumping rights to non-tenured teachers.

Ruter claims that the language in the negotiated contract would allow him to replace a tenured teacher in the carpentry

---

1. The term "tenured teacher" is used, rather than "continuing contract teacher," only be-

cause the former term is used in the contract.

department because the contract specifically provides that WAVTI shall have a *single* seniority list (i.e., not by department). Ruter also argues that because the contract does not address bumping of tenured teachers but addresses only bumping of non-tenured teachers, the general seniority rule of Minn.Stat. § 125.12, subd. 6(b), should apply.

The hearing examiner considered only provision 4(a) of the contract and concluded:

[I]t must be determined that the right of a teacher who has more than one area of licensure and who is about to be placed on unrequested leave has a right to take another position for which he/she is licensed only if that position is held by a non-tenured teacher. The parties have agreed in their Master Agreement that a less senior teacher may be retained rather than allowing a teacher to utilize an area of licensure for a position which has not been previously filled by that teacher.

The district court affirmed the hearing examiner's conclusion.

█ The scope of review of a hearing examiner's decision involving teacher tenure rights is limited. In *Kroll v. Independent School District No. 593,* 304 N.W.2d 338 (Minn.1981), the court said:

Cases interpreting the discharge provisions of the teacher tenure law, Minnesota Statutes chapter 125, are in agreement that the court is not at liberty to hear the case de novo and substitute its findings for those of the school board. * * * "A school board's decision to terminate a teacher or principal should be set aside only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law." * * * When embarking upon the review described above, however, the supreme court owes no deference to the trial court's determination.

*Id.* at 342 (quoting *Liffrig v. Independent School District No. 442,* 292 N.W.2d 726, 729 (Minn.1980)).

Although this is an extremely limited standard of review, it has also been said that an appellate court "cannot uphold the decision [of a school board] merely on the basis of evidence which in and of itself justifies it without taking into account contradictory evidence or evidence from which conflicting inferences can be drawn." *Liffrig v. I.S.D. No. 442,* 292 N.W.2d at 729. In the present situation the other terms of the contract must be examined, even though they appear not to have been considered by the hearing examiner.

█ When the negotiated contract is examined as a whole, it is apparent that seniority at WAVTI was intended to be "shop-wide." This conclusion is mandated by the clear and unequivocal statement in subdivision 5(f) of the contract, which says:

Seniority in the junior and senior high occupational groups shall be by departments. Elementary and W.A.V.T.I. shall each have a single seniority list. W.A.V.T.I. seniority rights shall be limited by the current licensure * * *.

Thus, although seniority in the junior and senior high schools was intended to be accrued within departments, seniority at WAVTI was intended to be school-wide.

Other provisions in the negotiated contract either support or may be reconciled with this conclusion. For example, subdivision 4(c) says that seniority will accrue in a presently held position "where the seniority list is maintained by departments," implying that the contract is also intended to encompass situations, such as at WAVTI, where a seniority list is *not* maintained by departments. Subdivision 3(a) of the contract, which says that "[l]ayoffs shall be by departmental seniority in the occupational groups," means that layoffs must be by departmental seniority when in fact there are departments.

The hearing examiner relied on subdivision 4(a) of the negotiated contract, which defines the "bumping" rights of a teacher.

"Bumping" is a process which has been described as follows:

> When positions are eliminated due to economic reasons, terminations will be made departmentally, by seniority. Only in the event that the terminated teacher is licensed in another area will the seniority of that teacher be compared to the seniority of the teachers *in another department.* If the terminated teacher has greater seniority than a teacher retained in a department for which the terminated teacher is qualified, the teacher with less seniority will be "bumped."

*Berland v. Special School District No. 1,* 314 N.W.2d 809, 812 (Minn.1981) (emphasis supplied). This language indicates that the term "bumping" is used to describe a cross-departmental displacement process. In the present situation, however, we have found that WAVTI seniority was school-wide, rather than by department; thus, the hearing examiner's reliance upon the bumping provision was erroneous.[2] Rather than a case of "bumping" under subdivision 4(a) of the contract, this situation must be characterized as a "layoff" under subdivision 3 of the contract. Since Ruter had more seniority within WAVTI than the carpentry teacher, he should not have been placed on unrequested leave.

To accept the school district's position that it should be allowed to retain a less senior carpentry teacher while placing Ruter on unrequested leave would be to frustrate the basic intent of the teacher tenure statute and to discourage multiple licensure. As *Berland* notes:

> The result advocated by the school district, "bumping" not allowed or mandated by the statute, would have the inevitable effect of discouraging teachers from ever pursuing specialized training or attaining multiple licensure. Because the

school district could arbitrarily assign the teacher with multiple licenses from department to department, the teacher could never attain enough seniority in any one department to be more senior than teachers who stayed in one department. The multiple-licensed teacher, while experienced and tenured in the school district, could not avoid lay-offs or terminations associated with declining enrollments. To allow school boards such discretion in assignments is inconsistent with the clear intent of Minn.Stat. § 125.17 to retain and tenure experienced teachers.

*Berland,* 314 N.W.2d at 812. We therefore conclude that Ruter must be allowed to take the position of a less senior carpentry teacher.

## II

Because we reverse the decision of the hearing examiner and the district court, we need not discuss in detail Ruter's second claim against the school district, which is founded upon theories of estoppel. However, we note that the logical infirmities of such claims have been addressed by *Dollander v. Rochester State Hospital,* 362 N.W.2d 386, 390 (Minn.Ct.App.1985), where we stated:

> [T]he State is not Dollander's adversary in this case. In fact, the State's position is analogous to that of a stakeholder between Dollander in the assertion of his rights and the rights of other State employees who might be competing with him for a job.

## DECISION

The trial court erred in affirming the hearing examiner, and the hearing examiner erred in upholding Ruter's placement on

---

**2.** We note that even if the bumping provision were applicable, it is silent upon the issue of whether and when a multiple-licensed teacher may take another position held by a tenured teacher. As indicated by *Jerviss v. Independent School District No. 294,* 273 N.W.2d 638, 645 (Minn.1978), where a negotiated plan fails to incorporate a procedure authorized by the gen-

eral unrequested leave statute and also does not explicitly disallow the statutory safeguards, the plan "may be read to incorporate the statutory requirement * * * by implication." *Id.* at 645. In the present situation the statutory plan would allow Ruter to bump a less senior teacher in the carpentry department. *See Berland,* 314 N.W.2d at 812.

unrequested leave of absence. Ruter must be allowed to take the place of a less senior teacher in the carpentry department.

Reversed.