**Edward PIRROTTA, Petitioner, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 347, WILLMAR, Respondent.**

**No. C9–85–1490.**

Supreme Court of Minnesota.

Nov. 7, 1986.

Donald W. Selzer, Jr., Ann J. Schultz, St. Paul, for relator.

Patricia A. Maloney, St. Paul, for respondent.

SIMONETT, Justice.

In this appeal a teacher seeks a determination of seniority rights vis-a-vis another teacher. We conclude the petitioner is not collaterally estopped by a prior determination of the other teacher's seniority rights. We reverse and remand for further proceedings.

In the spring of 1983, Independent School District No. 347, Willmar, discontinued the position of technical tutor in its area technical-vocational school. Dale Ruter, the incumbent tutor, was placed on unrequested leave over his objection that he was also qualified to teach carpentry and was entitled to bump Edward Pirrotta, a less senior teacher in the carpentry department. On appeal to the court of appeals, that court reversed the school board's decision and stated, "Ruter must be allowed to take the position of a less senior carpentry teacher." *Ruter v. Independent School District No. 347*, 364 N.W.2d 823, 826 (Minn.App.1985). In compliance with this directive, the school board gave Ruter the carpentry position and put Pirrotta on unrequested leave.

It was now Edward Pirrotta's turn to protest. He requested a hearing to contest his placement on unrequested leave. Pirrotta conceded the court of appeals' decision in the *Ruter* case had determined Ruter's schoolwide seniority should take precedence over Pirrotta's departmentwide seniority, but Pirrotta claimed there was another issue not raised in the *Ruter* proceeding, namely, whether Ruter's carpentry license had been obtained in time to give him any seniority in carpentry. The school board, however, following the recommendation of the hearing officer, concluded it was required to follow the court of appeals' decision and installed Ruter in the carpentry position. Pirrotta, therefore, was placed on leave. The court of appeals affirmed the school board's action, ruling that Pirrotta was collaterally estopped by the *Ruter* decision from relitigating any seniority issues. *Pirrotta v. Independent School District No. 347, Willmar*, 381 N.W.2d 55 (Minn.App.1986). We granted Pirrotta's petition for further review.

**I.**

Pirrotta claims he should not be collaterally estopped from litigating his seniority

claim because he was not a party nor in privity with a party to the *Ruter* case. We agree.

Everyone agrees Pirrotta was not a party. Also, it is conceded Pirrotta did not have any "controlling participation" in the *Ruter* case, so privity cannot be found on that basis. *See, e.g., County of Ramsey v. Stevens*, 283 N.W.2d 918, 924 (Minn.1979). Neither was Pirrotta a successor in interest to any derivative claim of a party. *See, e.g., Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902–03 (Minn.1984). Rather, the school district maintains privity should exist because it represented Pirrotta's interests in the prior litigation. *See, e.g., Margo-Kraft Distributors, Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 278, 200 N.W.2d 45, 48 (1972). The court of appeals agreed with this argument, holding Pirrotta was collaterally estopped because the school district, in opposing Ruter's claim, "adequately represented" Pirrotta's interests, thereby putting Pirrotta in privity with the school district. But simply because the position taken by the school district happened to coincide with Pirrotta's interests does not mean the school district, no matter how well it presented its own case, was adequately representing the non-party interests of Pirrotta. *See Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 864 (5th Cir.1985) (more than parallel interests required). Here the school district was pursuing its own interests in the *Ruter* litigation, acting in its own behalf and without any accountability to Pirrotta. Hence, the requisite privity is lacking and collateral estoppel does not apply. We do not think the doctrine of "virtual representation," urged by the school district and as enunciated by the Fifth Circuit in *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.1975), is helpful.[1]

## II.

If collateral estoppel is not a bar to Pirrotta's claim, both Pirrotta and the school district then ask us to reach the seniority issue on its merits. Pirrotta concedes the court of appeals was correct in *Ruter* in holding that seniority in the vocational-technical school was not departmentwide, but schoolwide. He asserts, however, that even under schoolwide seniority, he is senior to Ruter for teaching carpentry. He bases this claim on the negotiated unrequested leave provision in the master contract, which reads:

WAVTI [Willmar Area Vocational-Technical Institute] seniority rights shall be limited by the current licensure *at the beginning of each fiscal year, which is July 1.* (That is, for a WAVTI instructor to take a position he/she must have a current license to teach that position.)

(Emphasis added.)

In other words, bumping rights are to be determined according to licensures held as of July 1. But of which year? Ruter bumped Pirrotta from the carpentry position for the 1983–84 school year. Ruter obtained his carpentry license during the preceding 1982–83 school year, in September 1982. Consequently, at the beginning of the school year preceding the school year in which bumping was to take place, *i.e.*, on July 1, 1982, Ruter did not yet have a carpentry license. However, at the beginning of the school year in which bumping was to occur, *i.e.*, on July 1, 1983, Ruter did have a carpentry licensure. Which July 1 is the seniority "freeze" date? The school district says it should be July 1, 1983, while Pirrotta says it should be July 1, 1982.

We decline to answer the question. It appears we do not have all the facts, such

1. In *Aerojet*, the Fifth Circuit said a nonparty may be bound by a prior judgment "if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Id.*, 511 F.2d at 719. This kind of analysis, however, appears to be no different than traditional privity analysis of representation of a nonparty by a party. Indeed, the Fifth Circuit quite recently has said as much. *Clark v. Amoco Production Co.*, 794 F.2d 967, 974 (5th Cir. 1986). Interestingly, our court of appeals in *Bogenholm by Bogenholm v. House*, 388 N.W.2d 402, 406 (Minn.App.1986), characterized its use of "adequate representation" in *Pirrotta* as "unique."

as the collective bargaining history of the master contract, to determine the intent of the contracting parties on the proper seniority freeze date. Nor are we factfinders. Moreover—and Edward Pirrotta will appreciate this—we should not be determining Ruter's seniority status without Ruter here.

■ We do hold, however, contrary to the school district's contention, that Pirrotta did not waive his claim of seniority over Ruter by failing to grieve the posted seniority list. Unlike *Blank v. Independent School District No. 16*, 393 N.W.2d 648 (Minn., 1986), where this court found waiver when a teacher failed to grieve a seniority list that omitted pertinent data on her teaching licensures, here the Willmar seniority list was silent on the effective July 1 freeze date. There was nothing for Pirrotta to grieve. Pirrotta's disagreement was not with the posted seniority list but with the school district's interpretation of the master contract language on the freeze date, and this issue never surfaced until Pirrotta's unrequested leave hearing.

We remand this matter, therefore, to the school board for further proceedings. The school district should reconvene Pirrotta's unrequested leave hearing, giving Ruter notice of a right to intervene, and decide whether the Pirrotta-Ruter seniority rights are to be determined as of licensures held July 1, 1982, or July 1, 1983.[2]

## III.

It is indeed unfortunate this matter, twice in the appellate courts, must now go back yet again for further proceedings. Especially is this so for the school district which has found itself caught in the protracted legal crossfire of two teachers. Part of the problem has been a poorly drafted unrequested leave provision in the master contract and a seniority list which failed to reflect the parties' contractual understanding. In *Blank v. Independent School District No. 16, supra,* we stressed the importance of seniority lists. If properly drafted and not grieved, they become final and obviate problems that can arise later when staffing decisions must be made. But we recognize, too, that part of the problem confronting the parties in this case was a lack of direction in the statutes on how to proceed when there are conflicting seniority claims and no apparent forum for more than one teacher at a time to be heard.

■ Until the legislature may act, we hold that at the second stage of a hearing to place teacher A on unrequested leave, *i.e.,* at the stage where teacher A is claiming a right to bump teacher B, the school district should give notice to teacher B that he or she may intervene to protect their seniority rights, and that failure to intervene will be deemed acquiescence in the school district's action. In some schools, especially those with large faculties, bumping teacher B may cause further bumping, which may require further invitations to intervene, but, even so, it would seem the best way to avoid serial hearings is to provide one hearing, if possible, at which all concerned can be heard. Ordinarily, the relative seniority rights of the faculty are not in dispute, so in most cases teacher B may choose not to intervene; but when disputes do arise, as here, a hearing at

---

**2.** The parties, if they all agree, could, as an alternative, submit the issue of the proper seniority freeze date to grievance arbitration before an experienced arbitrator under the terms of the master contract. The issue involved is one of general contract administration, which is ideally suited for grievance arbitration, and need not involve the courts. The parties to arbitration would include the parties to the master contract, namely, the exclusive representative and the school district. The neutral arbitrator's decision would be final and binding on all concerned. The only issue remaining between Pirrotta and Ruter is the meaning of the master contract language and, once this is resolved, the relative seniority of the two teachers will be evident. We recognize, however, that the seniority freeze date issue has arisen in the unrequested leave hearing and may be resolved there. Only the "second stage" of the unrequested leave hearing need be reconvened. *See Roseville Education Association v. Independent School District No. 623,* 391 N.W.2d 846 (Minn. 1986).

which both affected teachers may appear should be provided.

Reversed and remanded.