482 So.2d 505 (1986)
HILLSBOROUGH COUNTY AVIATION AUTHORITY and Hillsborough County Civil Service Board, Appellants,
v.
HILLSBOROUGH COUNTY GOVERNMENTAL EMPLOYEES ASSOCIATION, INC., Hillsborough County Police Benevolent Association, Inc., and Public Employees Relations Commission, Appellees.
No. 85-867.
District Court of Appeal of Florida, Second District.
January 22, 1986.
Lucius M. Dyal, Jr. and Mark A. Hanley of Shackleford, Farrior, Stallings & Evans, P.A., Tampa for appellant Hillsborough County Aviation Authority.
Peter W. Zinober and Richard C. McCrea, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. and J. Ronald Wigginton, Tampa, for appellant Hillsborough County Civil Service Board.
Gene "Hal" Johnson, Tallahassee, for appellees Hillsborough County Governmental Employees Ass'n, Inc., and Hillsborough County Police Benevolent Ass'n., Inc.
Phillip P. Quaschnick, Tallahassee, for appellee Public Employees Relations Com'n.
LEHAN, Judge.
The Hillsborough County Aviation Authority (the Authority) and the Hillsborough County Civil Service Board (the Board) appeal from an order of the Public Employees Relations Commission (PERC). The order found that the Authority had committed unfair labor practices in violation of sections 447.501(1)(a) and (c), Florida Statutes (1983), "by refusing to implement certain provisions in the 1984 ratified collective bargaining agreement between the ... [Authority] and the Hillsborough County Police Benevolent Association [the PBA] ... and the Hillsborough County Governmental Employees Association [the GEA] concerning the issues of holidays, funeral leave, seniority and layoffs...." It is undisputed that the provisions of the collective bargaining agreement concerning those issues are in conflict with the uniform terms and conditions of employment in the Board's rules and regulations. We reverse.
After negotiating the collective bargaining agreement, the Authority, in order to eliminate the conflict, requested that the Board amend its rules and regulations. The Board did not do so. The Authority then did not implement the agreement, and the unfair labor practice charges against the Authority which are the subject of this appeal were filed by the PBA and the GEA.
*506 We hold that the Authority did not commit unfair labor practices. In its failure to implement the provisions of the collective bargaining agreement the Authority appeared to have acted in accordance with section 447.309(3), Florida Statutes (1983), which provides:
If any provision of a collective bargaining agreement is in conflict with any law, ordinance, rule, or regulation over which the chief executive officer [of the public employer] has no amendatory power, the chief executive officer shall submit to the appropriate governmental body having amendatory power a proposed amendment to such law, ordinance, rule, or regulation. Unless and until such amendment is enacted or adopted and becomes effective, the conflicting provision of the collective bargaining agreement shall not become effective.
The Authority had a duty to bargain in good faith. Section 447.501(1)(c). The Authority did not violate that duty. To the contrary, the Authority, after negotiating the agreement, not only appeared to follow section 447.309(3) but also followed this court's opinion in Pinellas County Police Benevolent Association v. Hillsborough County Aviation Authority, 347 So.2d 801 (Fla. 2d DCA 1977). Pinellas held that the Board has discretion to amend or not amend its rules and regulations when a public employer requests an amendment to eliminate a conflict with a collective bargaining agreement. Pinellas also held that, in accordance with section 447.309(3), collective bargaining agreement provisions are not effective when in conflict with civil service rules and regulations unless and until those rules and regulations are amended to eliminate the conflict. As was concluded in Pinellas, "the language used by the legislature is that `unless and until' the agreement is so ratified its conflicting provisions remain ineffective." 347 So.2d at 803. The Authority did all it could to implement the agreement consistent with the law set out in Pinellas. Appellees, PERC, the PBA and the GEA do not dispute that the Authority followed Pinellas.
Appellees seek to avoid the effect of Pinellas in several ways. For example, they assert, as discussed below, that Pinellas does not represent currently valid law and that, although Pinellas involved the Authority and the same groups of employees as are involved here, Pinellas is not binding upon this case under the doctrine of collateral estoppel because the unions in Pinellas were not the same as those here.
They cite Hotel, Motel, Restaurant Employees & Bartenders Union, Local 737, AFL-CIO v. Escambia County School Board, 426 So.2d 1017 (Fla. 1st DCA 1983), as representing currently valid law. In Escambia the First District Court of Appeal concluded that section 447.309(3) does not govern conflicts between collective bargaining agreements and civil service laws or regulations. That conclusion appeared to run counter to the literal wording of section 447.309(3), as the First District recognized. The Escambia opinion agreed with PERC's statement in that case that the argument was "facially very appealing" that section 447.309(3) resolves any conflict between a collective bargaining agreement and civil service rules and regulations. 426 So.2d at 1019. Escambia, however, relied upon section 447.601 which provides
Merit or civil service system; applicability  The provisions of this part shall not be construed to repeal, amend, or modify the provisions of any law or ordinance establishing a merit or civil service system for public employees or the rules and regulations adopted pursuant thereto or to prohibit or hinder the establishment of other such personnel systems unless the provisions of such merit or service system laws or ordinances or rules and regulations adopted pursuant thereto are in conflict with the provisions of this part, in which event such laws, ordinances, or rules and regulations shall not apply, except as provided in s. 447.301(4).
In light of section 447.601, Escambia adopted the argument of PERC in that case that "[i]t seems clear from a reading *507 of both statutes that Section 447.309(3) must be read as contemplating conflicts between collective bargaining agreements and laws or regulations other than laws or regulations relating to civil service systems." 426 So.2d at 1019.
We do not believe the apparent conflict between those conclusions in Escambia and in Pinellas is the determinative issue in the case at hand which consists only of an appeal from a decision of PERC that the Authority was guilty of unfair labor practices. Therefore, we need not address the further argument of the PBA and the GEA to the effect that there is really no such conflict because Escambia merely represented a further evolutionary step beyond Pinellas in the developing law involving public sector bargaining. We also do not address the argument of the Board in this case that the Escambia County Civil Service Act was materially different from the Hillsborough County Civil Service Act.
As we have said, this case simply turns upon whether the Authority committed unfair labor practices. Types of unfair labor practices are listed in section 447.501(1). The principal type potentially involved in this case is described in section 447.501(1)(c), which proscribes on the part of public employers "[r]efusing to bargain collectively, failing to bargain collectively in good faith... ." The Authority, in its failure to implement provisions in the collective bargaining agreement after the Board had refused the Authority's request to amend the rules and regulations, was following Pinellas and therefore did not fail to bargain in good faith. Even assuming, arguendo, that Pinellas was wrong, we cannot conclude that the Authority was wrong.
The Board and the Authority dispute the assertion by appellees that the parties in Pinellas were materially different from those in this case and contend that the opinion of this court in Pinellas is binding under the doctrine of estoppel by judgment. In support of their position that, although the PBA and the GEA were not the unions before the court in Pinellas, both cases essentially involved the same parties, the Board and the Authority present alternative arguments. They argue, first, that there was privity between, on the one hand, the PBA and the GEA in this suit and, on the other, the unions in that suit even though the PBA and the GEA did not receive their representation certifications directly from the unions who were parties to Pinellas. Secondly, they argue, citing Aerojet-General Corp. v. Askew, 511 F.2d 710 (5th Cir.1975), that the PBA and the GEA are bound by the results of that suit through application of the doctrine of "virtual representation." The appellees disagree with those arguments and also contend that section 447.309(3), as interpreted in Pinellas, is unconstitutional because the pertinent civil service rules and regulations impede public employees' rights under article I, section 6 of the Florida Constitution to collective bargain. In Pinellas this court alluded to that constitutional argument by saying that "[a] public employee's constitutional right to bargain collectively is not and cannot be coextensive with an employee's right to so bargain in the private sector. Certain limitations on the former's right are necessarily involved." 347 So.2d at 803. But that issue of constitutionality was expressed not passed upon in Pinellas. 347 So.2d at 803. In any event, we need not address those contentions and arguments of either the Authority and the Board or of PERC, the PBA, and the GEA. We agree with the alternative argument of the Authority and the Board that the Authority did not commit unfair labor practices regardless of whether or not those contentions and arguments are valid.
Whether or not estoppel by judgment is applicable, the Authority, by taking the steps which it took in requesting that the Board amend its rules and regulations so as to eliminate the conflict, followed the law as set out in Pinellas. Also, whether or not section 447.309(3), as interpreted in Pinellas, may be held to be unconstitutional, *508 the Authority followed the established law.
We recognize that in Escambia the First District Court of Appeal expressed "grave constitutional doubts" about that statute under the type of interpretation of the statute which was argued by the school board in that case and which had been made by this court in Pinellas. 426 So.2d at 1019. But we do not reach that constitutional issue here. We do not conclude that a public employer has committed unfair labor practices by following the law as set out by an appellate court of this state, regardless of whether or not that law was based upon a statute the constitutionality of which was questioned by another appellate court after the decision by the first appellate court. Our declining to address that constitutional issue should not be taken as any indication that we share the doubts expressed in Escambia. We are not necessarily inclined to agree that a statute, such as section 447.309(3), could not represent an expression of policy, properly within the legislative sphere, to harmonize collective bargaining agreements with civil service laws and regulations. At the same time, as further explained below, we also do not reach the aspect dealt with in Escambia which apparently involved whether, in light of section 447.601 dealing specifically with civil service rules and regulations, section 447.309(3), which only refers to "any law, ordinance, rule, or regulation," is intended to express that policy. Escambia does not refer to Pinellas, nor does Pinellas refer to section 447.601 on which Escambia relied. Nor does Escambia refer to other differences in the wording of sections 447.309(3) and 447.601. For example, section 447.309(3) refers to a "provision of a collective bargaining agreement ... in conflict with any law, ordinance, rule, or regulation... ." (emphasis added), whereas section 447.601 refers to a conflict between "the provisions of any law or ordinance establishing a merit or civil service system" and "the provisions of this part" (emphasis added), to wit, the provisions of the Public Employees Relations Act. There had been no argument by any party in Escambia contrary to the proposition that the provisions of the Public Employees Relations Act should prevail over provisions of the Escambia County Civil Service Act. 426 So.2d at 1018.
Actually, the holding in Escambia is not in conflict with our holding here, and the Authority not only followed Pinellas but also followed the holding in Escambia. Escambia affirmed the dismissal by PERC of unfair labor practice charges against the school board in that case on the basis that "the standing order of the Circuit Court enjoining the Escambia County School Board from implementing any conflicting provisions of the collective bargaining agreement without amendment of the Civil Service Board rules, regulations, or the Act itself precluded it from finding that the School Board committed an unfair labor practice in failing to implement conflicting provisions." 426 So.2d at 1018. It is true that while in Escambia the school board was under an injunction to not implement the collective bargaining agreement, in the case at hand the Authority simply followed Pinellas in not implementing the collective bargaining agreement. But that is a distinction without a material difference. In both cases the public employer followed the law and thereby did not commit unfair labor practices. The conclusion in Escambia that civil service rules and regulations which conflict with a collective bargaining agreement yield to the collective bargaining agreement is, in the final analysis, dicta.
PERC further argues that we should reconsider Pinellas and adopt what we have referred to as dicta in Escambia. However, even if we did so, our conclusion in this case as to an issue already addressed by this court would be no more than dicta, and we would still reverse the decision of PERC. As we have said, this case is before us on appeal from a finding that the Authority was guilty of unfair labor practices. For the reasons given above, the *509 Authority was not guilty of unfair labor practices.
Since the conflict between Pinellas and Escambia arises from dicta in Escambia, we do not certify this case to the Florida Supreme Court under rule 9.030(a)(2)(A)(iv), Florida Rules of Appellate Procedure. See Ciongoli v. State, 337 So.2d 780 (Fla. 1976). However, there is no question that the issue as to which there is conflict between the opinions in those cases is of substantial significance under the circumstances of this case, however peripheral that significance may be to the appeal now before us. Moreover, the issue seems likely to arise in other similar circumstances in the future. Therefore, also taking into consideration the desires of all appellants and appellees in this case to have that conflict resolved, we certify to the Florida Supreme Court the following question to be of great public importance:
WHEN PROVISIONS OF A COLLECTIVE BARGAINING AGREEMENT WHICH HAS BEEN ENTERED INTO BY A PUBLIC EMPLOYER CONFLICT WITH CIVIL SERVICE RULES AND REGULATIONS AND THE GOVERNMENTAL BODY HAVING AMENDATORY POWER OVER THE CIVIL SERVICE RULES AND REGULATIONS REFUSES TO AMEND THOSE RULES AND REGULATIONS IN SUCH A MANNER AS TO ELIMINATE THE CONFLICT, DOES SECTION 447.309(3) APPLY TO CIVIL SERVICE RULES AND REGULATIONS AND THEREFORE GOVERN THE EFFECTIVENESS OF THE COLLECTIVE BARGAINING AGREEMENT?
Any conclusion that the Pinellas interpretation of section 447.309(3), which provides an affirmative answer to the foregoing question, is correct would seem to bring into focus the doubts expressed in Escambia as to the constitutionality of 447.309(3) under that interpretation.
Reversed.
RYDER, C.J., and SCHEB, J., concur.